UNITED STATES of America,
Plaintiff-Appellee,

v.

Delia Aguilar SAN JUAN,
Defendant-Appellant.

No. 284, Docket 76–1300.

United States Court of Appeals,
Second Circuit.

Argued Oct. 5, 1976.

Decided Nov. 10, 1976.

Samuel Gruber, Stamford, Conn. (James W. Murdoch, Burlington, Vt., on the brief), for defendant-appellant.

Jerome F. O'Neill, Asst. U.S. Atty., Rutland, Vt. (George W. F. Cook, U.S. Atty. for the District of Vermont, Rutland, Vt., John R. Hughes, Jr., Asst. U.S. Atty., on the brief), for plaintiff-appellee.

Before LUMBARD, FEINBERG and MESKILL, Circuit Judges.

FEINBERG, Circuit Judge:

In this unusual case, Delia Aguilar San Juan appeals from a judgment of conviction in the United States District Court for the District of Vermont after a jury trial before Judge Albert W. Coffrin on a charge of violating 31 U.S.C. §§ 1058, 1101(a), (b), and regulations adopted thereunder.[1] These sections, which were enacted as part of the Bank Secrecy Act of 1970, 84 Stat. 1121 (1970), make it a crime willfully to transport into the United States monetary instruments exceeding $5,000 without filing a report thereof. Appellant raises a host of constitutional and other objections to her conviction. We need not deal with most of them because we find that the manner in which this case was tried worked a fundamental unfairness on appellant, and that a jury could not determine beyond a reasonable doubt that she had committed a crime. Accordingly, we reverse and, for reasons set forth below, also direct dismissal of the information.

1. Mrs. San Juan received a sentence of one year, of which all but 30 days was suspended, followed by three years of probation. The sentence was stayed pending appeal.

## I

In March 1975, appellant was a passenger on a bus coming from Canada into the United States through a port of entry at Highgate Springs, Vermont. She had with her $77,500 in cash in two brown packages in her valise. Customs Inspector Robert M. Johnson checked appellant's passport on the bus and asked her whether "she had purchased or acquired any items she bought in Canada or bringing any items in from Canada?" She replied that she had bought some candy for her children. Johnson did not ask appellant whether she had money with her in excess of $5,000, and appellant made no reference to the cash in her bag. Johnson did not give appellant Customs Declaration Form 6059-B, which included the question, "Are you . . . carrying over $5,000 in coin, currency or monetary instruments?" with a box to be checked for a "Yes" or "No" answer. Johnson then examined appellant's luggage and noticed her nervousness when she opened the bag and he saw the brown packages. Appellant said they were books.

Suspecting that the packages contained contraband, Johnson asked appellant to leave the bus and come to the nearby customs house. The packages were opened in the presence of Johnson and another inspector, Joan McClatchey, and were found to contain 775 bills of $100 each and letters indicating that the money was to be used for underground political purposes in the Philippines. Johnson then took the contents of the packages to the Port Director; none of it was returned to appellant. Appellant became very upset but eventually quieted down. In the course of the next few hours, Johnson presented appellant with Form 4790, entitled "Report of International Transportation Currency or Monetary Instruments" and told her that the form had to be filled out by anyone crossing the border with more than $5,000 in currency. Johnson was also joined by two Special Agents. Appellant asked for permission to telephone her husband to clarify the form. This was denied. Mrs. San Juan was given *Miranda* warnings and answered a number of questions. At the end of the interrogation, appellant was told that whether she signed the form or not, the Government was going to keep the money. Finally, when it became clear that appellant was not going to sign the form, she was allowed to call her husband and to leave.

In October 1975, an information was filed [2] charging appellant with violating 31 U.S.C. §§ 1058, 1101(a), (b), and 31 C.F.R. §§ 103.23(a), 103.25(b), relevant portions of which are reproduced in the margin.[3] The

**2.** The information superseded an earlier indictment.

**3.** 31 U.S.C. §§ 1058, 1101(a), (b) provide as follows:

§ 1058. *Criminal penalty*

Whoever willfully violates any provision of this chapter or any regulation under this chapter shall be fined not more than $1,000, or imprisoned not more than one year, or both.

§ 1101. *Reports*

*Persons required to file*

(a) Except as provided in subsection (c) of this section, whoever, whether as principal, agent, or bailee, or by an agent or bailee, knowingly—

(1) transports or causes to be transported monetary instruments—

. . . . .

(B) to any place within the United States from or through any place outside the United States, . . .

in an amount exceeding $5,000 on any one occasion shall file a report or reports in accordance with subsection (b) of this section.

*Contents of filed report*

(b) Reports required under this section shall be filed at such times and places, and may contain such of the following information and any additional information, in such form and in such detail, as the Secretary may require:

(1) The legal capacity in which the person filing the report is acting with respect to the monetary instruments transported.

(2) The origin, destination, and route of the transportation.

(3) Where the monetary instruments are not legally and beneficially owned by the person transporting the same, or are transported for any purpose other than the use in his own behalf of the person transporting the same, the identities of the person from whom the monetary instruments are received, or to whom they are to be delivered, or both.

(4) The amounts and types of monetary instruments transported.

information did not state whether the alleged crime occurred on the bus or in the customs house. Appellant moved to dismiss the information on the ground that the statute and regulations, which were allegedly violated, were unconstitutional. Appellant also moved to suppress the cash and documents taken from her at the customs station.[4] In its memorandum in opposition to the latter motion, the Government took the position that the alleged crime occurred on the bus when Mrs. San Juan "failed to declare the monetary instruments."[5] In late December 1975, Judge Coffrin denied the motion to dismiss and the motion to suppress. His opinion, reported at D.C., 405 F.Supp. 686, discussed at length the constitutional issues raised by defendant, some of which are quite substantial.

In January 1976, Mrs. San Juan moved to dismiss the information on the ground that, when read together with the Government's position referred to above, the information did "not charge an offense under the Bank Secrecy Act."[6] In its memorandum in op-

position to that motion, the Government reiterated its theory

that the violation took place on the bus at the time that the defendant failed to declare the monetary instruments to Inspector Johnson.[7]

At argument on the motion, the judge inquired whether the Government's claim was that

the offense occurred when the defendant failed to make a declaration on the bus. There isn't any question about that, is there?

The prosecutor replied:

No, there isn't, your Honor, that is no problem. The Assistant United States Attorney here stated that is his concept of the case.

The judge denied the motion to dismiss on the grounds that it was premature and that the information did charge an offense. When defense counsel then sought permission to file a motion for a bill of particulars, the judge denied it as "untimely."

At trial, the Government proceeded on its theory that the crime was committed on the

31 C.F.R. §§ 103.23(a), 103.25(b) provide as follows:

§ 103.23 *Reports of transportation of currency or monetary instruments.*

(a) Each person who physically transports, mails, or ships, or causes to be physically transported, mailed, or shipped, currency or other monetary instruments in an aggregate amount exceeding $5,000 on any one occasion from the United States to any place outside the United States, or into the United States from any place outside the United States, shall make a report thereof. A person is deemed to have caused such transportation, mailing or shipping when he aids, abets, counsels, commands, procures, or requests it to be done by a financial institution or any other person. A transfer of funds through normal banking procedures which does not involve the physical transportation of currency or monetary instruments in not required to be reported by this section.

§ 103.25 *Filing of reports.*

(b) Reports required to be filed by § 103.-23(a) shall be filed at the time of entry into the United States unless otherwise directed or permitted by the Commissioner of Customs. They shall be filed with the Customs officer in charge at any Customs port of entry or departure, or as otherwise permitted or directed by the Commissioner of Customs.

If the currency or other monetary instruments with respect to which a report is required do not accompany a person entering or departing from the United States, such reports may be filed by mail on or before the date of entry, departure, mailing or shipping, with the Commissioner of Customs, Attention: Currency Transportation Reports, Washington, D.C. 20226. They shall be on forms to be prescribed by the Secretary and all information called for in such forms shall be furnished.

4. Mrs. San Juan contended, inter alia, that the statute and regulations violated her fifth amendment privilege against self-incrimination; that the reporting requirements posed an unacceptable danger to first amendment freedom of association; and that, to the extent the statute authorized seizure of money without a warrant, it violated the fourth amendment.

5. Government's Memorandum in Opposition to Motion to Suppress, Nov. 25, 1975, at 4.

6. Defendant's Motion to Dismiss Information, Jan. 6, 1976, at 1.

7. Government's Memorandum in Opposition to Motion to Dismiss, Jan. 19, 1976, at 2.

bus. This was made clear in the prosecutor's opening statement to the jury, in his argument on the admissibility of evidence, in his response to defendant's motion for judgment of acquittal, and in the prosecutor's closing argument to the jury. For example, the following colloquy took place during the trial in argument over the admission of certain letters:

> Mr. O'Neill [for the Government]. Your Honor, for purpose of the record, I don't think I need to go into this again, but we made it clear as snow. We filed a bill of particulars.[8] The violation, as far as we are concerned, took place on the bus. The jury is not making a determination that she refused to sign the form.
>
> The Court. To elaborate more, the Government has steadfastly insisted the violation took place on the bus. In what respect do you claim it took place on the bus?
>
> Mr. O'Neill. We contend the violation took place on the bus at the point in time when Mrs. San Juan declined to inform the customs inspector she had material with her. She indicated she wasn't filing any type of report. She lied about what the material was. Our position is to that point in time.
>
> The Court. This is the only time of the violation, as far as the Government is concerned?
>
> Mr. O'Neill. We believe there are violations when she declined to sign it inside. However, we indicated we are not charging her with doing that at this point in time. This information is intended to point to the refusal on the bus, not refusal inside. We believe she can be charged with that, however, but we are not charging her with that incident in this case.

Similarly, in closing, the prosecutor argued:

> To clarify one thing in the things Mr. Gruber [defense counsel] charges as to where did the violation take place, it took place on the bus. To follow any other theory is to render that statute totally meaningless. Mrs. San Juan, at that point in time, made no attempt to file the written report. If she had said to the officer on the bus "You asked if I purchased anything, yes, I have $77,500" and he said "Well, you have to file a report," we wouldn't be here today. That violation took place right there on that bus and no written report was filed.

In response to this repeated claim, defense counsel continually stressed that no crime was committed on the bus primarily because the statute did not cover oral declarations and because defendant at that time had no idea she had to file a report.

During the trial, the judge seemed to accept the Government's theory of the case. In ruling that the letters referred to above were admissible, the judge cautioned the jury:

> You will recall this is when she came into the country that the Government claims the report should have been filed, and further, the Government claims that the offense occurred when she failed to report when she had this money in her possession at the time she was on the bus and she was first asked about it.[9]
>
> Now she is charged with no other offense in this matter, and you are not to consider these letters in connection with any other offense. I know of no other offense, as a matter of fact.

The judge's charge addressed this issue to some extent, as follows:

> [Y]ou will remember that defendant's counsel conceded in his opening statement that his client, in fact, did not file the report. You will also recall that the attorney for the United States, in his opening statement, advised that it is the Government's contention that the violation with which the defendant is charged occurred on the bus when she arrived in this country. In this regard, there was testimony that when questioned on the bus by a customs officer, the defendant failed to state or advise him that she was

---

8. This statement was inaccurate.

9. To the extent that this statement implied that defendant was specifically asked about money on the bus, the statement was inaccurate.

carrying a large amount of currency or monetary instruments as they are referred to in the statute. This testimony, if believed by you, standing alone does not constitute proof of the offense charged, as the statute and regulations do not require oral statements or declarations. The testimony may, therefore, be considered by you as bearing only upon the defendant's knowledge or intention in failing to file a written report of the currency as charged.

The charge did not otherwise discuss the issue of where the crime occurred.

The jury returned a guilty verdict. Defendant thereafter moved for judgment of acquittal notwithstanding the verdict, and this was denied. This appeal followed.

## II

In this court, appellant repeats the constitutional arguments made in the district court, see note 4 supra. Appellant also contends that because of the Government's insistence that the violation occurred on the bus, the judge committed reversible error in denying defendant's motions to dismiss the information and for judgment of acquittal.[10] As to the former, the Government responds that the information was concededly valid on its face. On the latter issue, the Government argues, apparently for the first time, that the jury could have found that the crime occurred "either on the bus or inside the Customs facility since either standing alone or when both read together are sufficient for a violation . . . ."[11]

The reason for the Government's change of position is readily apparent. If the only crime charged took place on the bus, there is a serious question whether the judge should have granted defendant's motion for

a judgment of acquittal at the end of the Government's case.[12] Without proof of any knowledge of, or notice to, Mrs. San Juan of the reporting requirements, a jury could not determine beyond a reasonable doubt that she had the requisite willful intent. *Cf. United States v. Mancuso*, 420 F.2d 556 (2d Cir. 1970). Although the Government introduced the letters referred to above in an attempt to establish willful intent, this evidence was inconclusive. Mrs. San Juan's failure to volunteer to Inspector Johnson on the bus that she was carrying more than $5,000 was arguably insufficient to establish that intent. Johnson did not ask her whether she had more than $5,000 with her, and did not use the simple Customs Declaration Form (6059–B), which would have elicited the information. Johnson did inquire whether Mrs. San Juan had purchased or acquired any items in Canada or was "bringing any items in from Canada." But most people would take that question to refer to "items" on which a duty would have to be paid, not to cash. The Government stresses that Mrs. San Juan wanted to conceal the true contents of her bag, and we have little doubt that this is true. But her actions would probably have been the same if she had carried $4,990, rather than $77,500, in her valise, and had erroneously thought that carrying the cash in was illegal. It must be remembered that Mrs. San Juan was not charged with carrying the cash across the border but with failing to file a report while doing so. And proof of the necessary intent to do the latter was remarkably weak.

■ However, there is a more fundamental reason why we cannot let the judgment of conviction stand. The prosecutor and defense counsel tried the case on the theory that the crime, if any, occurred on the bus.

---

10. Appellant also argues to us that the judge should at least have granted a bill of particulars, that the court committed prejudicial error by admitting into evidence letters linking the money with political activity in the Philippines, that the judge's charge on willfulness constituted reversible error, and that the statute was impermissibly vague under the fifth amendment.

11. Government's brief, at 35.

12. For all practical purposes, this was also the end of defendant's case. Defendant presented no additional evidence.

The judge's charge, however, apparently left open the possibility that the jury could find that appellant committed the crime in the customs house. Indeed, that is the essence of the Government's position in this court. But this was manifestly unfair to defendant. Because of the Government's consistent position throughout the trial, the defense's arguments, particularly in summation, were directed to showing that no crime was committed on the bus and that defendant's actions in the customs house, if relevant at all, did not evidence willfulness on the bus. As a result, the defense did not stress as emphatically as it might otherwise have done certain evidence in the record; for example, the statement of a customs agent to Mrs. San Juan that whether she completed the form or not, the money would not be returned to her; the seizure of the money by the agents; and their refusal to let her call her husband before signing the form.[13] To meet the Government's present contention that the crime occurred in the customs house, the defense could have argued that, in effect, once Mrs. San Juan was inside, she suffered a penalty of the alleged crime (forfeiture of the cash)[14] before she had had the opportunity to commit it. The argument would be that if Mrs. San Juan had realized she could get back the cash by signing the form, she might have done so.[15] This argument was irrelevant in the face of the Government's

theory that the crime had, in fact, been committed prior to the customs house questioning. But if the argument had been made, it would have both revealed the confusion in the Government's theory and perhaps have persuaded the jury that Mrs. San Juan did not act willfully.[16] Moreover, there was at least a question—apparently never fully explored because of the Government's trial theory—whether a crime could have occurred at all in the customs house since the cash was taken away from appellant before Form 4790 was presented to her to sign.[17] Under the circumstances, it would be manifestly unfair to allow this conviction to stand.

The confusion in the Government's theory of the case also requires that the information be dismissed. Again, it must be emphasized that 31 U.S.C. §§ 1058, 1101(a), (b) only punish the willful failure to file a report and not the transportation of the money. In addition, these reporting provisions of the Bank Secrecy Act require the registration of an otherwise innocent item, cf. *United States v. Mayo,* 162 U.S. App.D.C. 171, 498 F.2d 713 (1974), on which a duty is not generally collected. As a result, in order to prove willfulness, the Government should make some effort to bring the reporting requirement to the traveler's attention. See *United States v. Mancuso, supra;* cf. *United States v. Jones,* 368 F.2d 795 (2d Cir. 1966).[18] This was

13. After the Government's summation, defense counsel in response did briefly mention this evidence, noting that he was "not quite clear at this point whether or not the Government has changed its theory [that the violation occurred on the bus]." But in its reply summation, the Government unequivocally stated that the violation "took place on the bus."

14. 31 U.S.C. § 1102; 31 C.F.R. § 103.48. 31 U.S.C. § 1102 provides as follows:

§ 1102. *Forfeiture*

(a) Any monetary instruments which are in the process of any transportation with respect to which any report required to be filed under section 1101(a) of this title either has not been filed or contains material omissions or misstatements are subject to seizure and forfeiture to the United States. . . .

15. Mrs. San Juan did volunteer to the customs officials much of the information that is required on Form 4790.

16. Indeed, it appears from the record that on advice of counsel, Mrs. San Juan later filed Form 4790 before she was indicted and arrested.

17. Defendant's Request to Charge No. 3 was seemingly designed to raise this issue, but the judge apparently did not recognize it and, in any event, did not deal with it in his charge. Counsel again raised the argument to the judge in his motion for acquittal notwithstanding the verdict, but the judge denied the motion without comment on the issue.

18. In the future, the Government could avoid some of the confusion generated by this case by using a form that asks the traveler whether

**320**

concededly not done on the bus in this case. Moreover, by the time Mrs. San Juan was clearly informed in the customs house of the reporting requirement, the money had been taken from her. At that point, she may have wanted the money back, but not at the cost of completing Form 4790, or she may have believed that she could not take the money back in any event, or that she had already committed the crime and was afraid to sign any document; on these theories she would arguably not have had the requisite intent. Moreover, it would be impossible to determine with any degree of certainty what her intent was with respect to the form, and we therefore dismiss the information.[19]

Accordingly, the judgment of conviction must be reversed and the information dismissed.

he is carrying over $5,000 and, if so, notifies him that he may have to make some declaration.

19. On this disposition, it is unnecessary to resolve the various constitutional issues appellant raises. See notes 4 and 10 supra.