UNITED STATES of America, Plaintiff-Appellee,

v.

Araceli Cremata GRANDA, Defendant-Appellant.

No. 77–5027.

United States Court of Appeals, Fifth Circuit.

Jan. 9, 1978.

Karl J. Leib, Jr., Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Charles A. Intriago, David Geneson, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, RONEY and FAY, Circuit Judges.

FAY, Circuit Judge:

On November 29, 1976, Araceli Cremata Granda was found guilty of knowingly and willfully transporting monetary instruments in an amount exceeding $5,000.00 into the United States in violation of 31 U.S.C. §§ 1058 and 1101. Her appeal raises the issue of what significance the words *knowingly* and *willfully* have in the context of these statutes.

Title 31 U.S.C. § 1101 provides in part:

(a) Except as provided in subsection (c) of this section, whoever . . . knowingly—

(1) transports or causes to be transported monetary instruments—

(A) from any place within the United States to or through any place outside the United States, or

(B) to any place within the United States from or through any place outside the United States, or

(2) receives monetary instruments at the termination of their transportation to the United States from or through any place outside the United States

in an amount exceeding $5,000 on any one occasion shall file a report or reports in accordance with subsection (b) of this section.

The report to be filed by a traveler covered by § 1101 is known as Form 4790, and is entitled "Report of International Transportation Currency or Monetary Instruments." Subsection (b) of § 1101 sets forth the information which the filed report should contain, and it provides specifically:

(b) Reports required under this section shall be filed at such times and places, and may contain such of the following information and any additional informa-

tion, in such form and in such detail, as the Secretary may require:

(1) The legal capacity in which the person filing the report is acting with respect to the monetary instruments transported.

(2) The origin, destination, and route of the transportation.

(3) Where the monetary instruments are not legally and beneficially owned by the person transporting the same, or are transported for any purpose other than the use in his own behalf of the person transporting the same, the identities of the person from whom the monetary instruments are received, or to whom they are to be delivered, or both.

(4) The amounts and types of monetary instruments transported.

The criminal penalties for failure to file a report required by § 1101 are provided for in 31 U.S.C. § 1058 which states:

Whoever willfully violates any provision of this chapter or any regulation under this chapter shall be fined not more than $1,000, or imprisoned not more than one year, or both.

In our case, Mrs. Granda was charged with the violation of these statutes when she returned to the United States from a trip to Panama. Upon arrival at the Miami International Airport she presented a customs official her "Customs Declaration" card (known as Customs Form 6059–B), which she apparently was not responsible for filling out, but which she did sign.[1] Question 10 on Form 6059–B asks whether "you or anyone else in your party [is] carrying over $5,000.00 in coin, currency, or negotiable instruments." The box "no" on defendant's form was checked. During the routine examination of the defendant's belongings, the customs officer saw $5,000 in

an unsealed envelope in the defendant's purse. Another $5,000 was found in the defendant's wallet. The defendant claimed that $5,000 of the money belonged to her traveling companion, but her companion could not be found to verify this. The defendant also claimed that she was unaware of the reporting requirements of § 1101. Mrs. Granda was cooperative during this whole ordeal; and at no time did the customs officials advise her of, or present her with, a Form 4790 to complete in order to comply with § 1101. The customs officials eventually seized the $10,000 and placed the defendant under arrest.

Our task today is to determine the significance of the terms *knowingly* and *willfully* as used in these statutes. The defendant contends that since § 1101 requires a *knowing* violation and § 1058 requires a *willful* violation, the mere failure to comply with terms of the statutes is not a crime unless it can be shown that the defendant had knowledge of the reporting requirements and acted with the specific intent to circumvent those requirements. On the other hand, the government contends that we are not dealing with a specific intent crime, and that the terms *knowing* and *willful* require only that the person charged with the duty know what he is doing and that he act deliberately. The government argues that the statutes do not require that the defendant be aware of the fact that he is breaking the law.

Our research has uncovered no case law in the Fifth Circuit defining these terms as applied to §§ 1058 and 1101. There is, of course, a tremendous amount of case law in every court defining these terms as used in the context of other federal criminal statutes. Not surprisingly, however, these terms have defied any consistent interpretation by the courts.[2] The Second Circuit is

---

1. The defendant contends that her traveling companion completed the form and gave it to her to sign which she did without reading it. Examination of the form leads one to believe that this is probably what happened.

2. For example, the Supreme Court said in *Felton v. United States*, 96 U.S. 699, 24 L.Ed. 875

(1878) that, "Doing or omitting to do a thing knowingly and willfully implies not only a knowledge of the thing but a determination with bad intent to do it or omit doing it." *Id.* at 702, 24 L.Ed. 875. This language helped to entrench the widely followed principle that the gravamen of any offense which requires a showing of willfulness is the bad purpose with

the only Court of Appeals directly to confront the meaning of these terms as used in the statutes before us. In *United States v. San Juan*, 545 F.2d 314 (2d Cir. 1976), the defendant, a Mrs. San Juan, entered the United States from Canada by bus. At the port of entry, a customs official questioned Mrs. San Juan about the contents of two brown packages she was carrying. Mrs. San Juan claimed that the packages contained books. Examination of the packages revealed that they in fact contained $77,500. Mrs. San Juan, unlike the defendant in our case, was never given the Customs Declaration Form 6059–B which includes the question, "Are you . . . carrying over $5,000.00 in coin currency or monetary instruments?" After discovery of the money, the contents of the packages were given to the entry port director. Over a course of a few hours, the defendant was presented with the Form 4790, but was told that the government would keep the money regardless of whether she signed the form. Mrs. San Juan refused to sign the form. During the trial of the case, the government took the position that the crime of transporting

more than $5,000 into the United States without filing a report was completed on board the bus—before the Form 4790 was offered to Mrs. San Juan. The Second Circuit reversed Mrs. San Juan's conviction. The Court reasoned that, "[w]ithout proof of any knowledge of, or notice to Mrs. San Juan of the reporting requirements, a jury could not determine beyond a reasonable doubt that she had the requisite willful intent." *Id.* at 318. The Court also said that:

> It must be remembered that Mrs. San Juan was not charged with carrying the cash across the border but with failing to file a report while doing so. And proof of the necessary intent to do the latter was remarkably weak.

*Id.* The Court concluded by saying:

> As a result, in order to prove willfulness, the government should make some effort to bring the reporting requirement to the traveler's attention.

*Id.* at 319.

■■■■ We agree with the position taken by the Second Circuit,[3] and hold that the

---

which the act is committed. In *Murdock v. United States*, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933), the Supreme Court continued to employ a strict interpretation of the word willful, but in dicta said, "The word [wilful] often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental." *Id.* at 394, 54 S.Ct. at 225. This dicta has been relied on by some courts to apply a broader interpretation of the word willful. For example, the Fifth Circuit has said that the term willful as used in 18 U.S.C. § 1001, a statute which prohibits the knowing and willful misrepresentation of a material fact within the jurisdiction of a federal department or agency, does not require that the accused know he is breaking the law. *McBride v. United States*, 225 F.2d 249, 254 (5th Cir. 1955). The more recent Supreme Court cases indicate that the broader interpretation of knowing and willfull may be incorrect. In *United States v. Bishop*, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973), the Supreme Court discussed the meaning of willful in federal tax statutes that imposed criminal liability. The Court held that the term willful must include a bad purpose element.

**3.** At oral argument, the government took the position that *San Juan* has in effect been overruled by the recent Second Circuit case of *United States v. Gomez-Londono*, 553 F.2d 805 (2nd

Cir. 1977). The government first brought the case to the Court's attention at oral argument, and the government failed to provide defense counsel with a copy of the opinion prior to this time. It is somewhat astounding to us that the government could argue to this Court that *Gomez-Londono* reverses *San Juan*. The defendant in *Gomez-Londono* was charged in a three count indictment with knowingly and willfully making a fraudulent declaration to customs agents in violation of 18 U.S.C. § 1001 (count one), willfully transporting currency in excess of $5,000 without filing a report in violation of 31 U.S.C. § 1101 (count two), and knowingly delivering firearms to Avianca Airlines for transportation in foreign commerce without appropriate notice to the carrier in violation of 18 U.S.C. § 922(e) (count three). The only count with which the defendant was charged that is relevant to *San Juan* is count two. The court in *Gomez-Londono* states specifically that the findings made by the district court with regards to counts one and two are not at issue on appeal, and the principal problem to be discussed is the admissibility of certain evidence with regards to count three. It is hard to understand how the government can argue that *San Juan* has been overruled when the *Gomez-Londono* court expressly states that " . . . the issue here is not whether appellee could be convicted under 31 U.S.C. §§ 1058, 1101 . . .."

terms *knowing* and *willful* require proof of the defendant's knowledge of the reporting requirement and his specific intent to commit the crime. Congress, by adding these terms, took this regulatory statute out of the ranks of strict liability type crimes. To us, this makes sense because the failure to report, when one is without knowledge of the reporting requirement, must be classified as a "nonfeasance" as opposed to a "misfeasance". Since the purpose of all law, and the criminal law in particular, is to conform conduct to the norms expressed in that law, no useful end is served by prosecuting the "violators" when they have no knowledge of the law's provisions. By so holding, we are prompting the reversal of this case for two reasons. Initially it is because the trial court failed to properly instruct the jury on specific intent. In a case such as this, the proper instruction would include some discussion of the defendant's ignorance of the law since the defendant's alleged ignorance of the reporting requirements goes to the heart of his or her denial of the specific intent necessary to commit the crime. *See United states v. Schilleci*, 545 F.2d 519, 524 (5th Cir. 1977). Failure of the defendant to have the benefit of this instruction was plain error.

The second reason this case requires reversal is that we feel as a matter of law that it is impossible to prove beyond a reasonable doubt that the defendant acted with knowledge of the reporting requirements. The failure of the government to make known the requirements of the statute is fatal to their case. The isolated act of bringing money in excess of $5,000 into the country is not illegal or even immoral. What is required is merely a filing of the proper form. Proof of the requisite knowledge and willfulness, therefore, is almost impossible unless affirmative steps are taken by the government to make the laws' requirements known. The government argues that the defendant was made aware of the reporting requirement by the question on the customs declaration form asking whether the defendant was carrying more than $5,000. We do not agree. The effect, if any, of this question is merely to cause the traveler to think that it is illegal to carry a large amount of money into the country. The question in no way tells the traveler it is perfectly legal to enter or leave the country with more than $5,000 but that a form reporting this fact must be completed. Nor does the untruthful answer of the question by the defendant prove beyond a reasonable doubt that she knew she was supposed to fill out a form. An untruthful answer could very easily be prompted by the question on the form which might cause the traveler who enters the country with more than $5,000 to think that his or her possession is by itself illegal, and who therefore answers untruthfully in order to attempt to avoid being caught breaking the law. We do not accept the government's contention that the defendant's falsification of her declaration forms proves that she was aware of the separate reporting requirement.

It is interesting to consider how easily the government could avoid a recurrence of this problem. The simplest solution would be to add a sentence on the Customs Declaration Form to the effect that if you are carrying greater than $5,000 you are required by law to fill out certain forms. Such a sentence would place all travelers on notice. Alternatively, customs officers upon finding sums in excess of $5,000 could advise travelers such is not illegal but the law does require completion of an additional form (4790) and then provide appropriate docu-

---

Id. at 810. Furthermore, footnote 7 of the opinion effectively reaffirms the holding of *San Juan* as to the "willfulness" element which was *not* at issue on appeal in *Gomez-Londono* but is very much at issue here. Footnote 7 provided in part:

It must be emphasized that 31 U.S.C. §§ 1058 and 1101 punish not the transportation of money, but the willful failure to file a report. See *United States v. San Juan, supra*, 545 F.2d at 319. Although appellee was made aware of his obligation to file a report, he was never actually tendered a Form 4790 and it may be that his statements and conduct on February 22 could not establish beyond a reasonable doubt a willful failure to file. This, however, was not the issue before the magistrate.

ments. This procedure would also place a traveler on notice. Unfortunately, nothing in the methods currently employed by the government places a traveler on notice of the reporting requirements, and, as a result, it is impossible to prove that a traveler *knowingly* and *willfully* violated the law. Consequently, the judgment of the district court must be reversed, and that court is directed to enter a judgment of acquittal.

REVERSED.