UNITED STATES of America,
Plaintiff-Appellee,

v.

FORTY–EIGHT THOUSAND, FIVE HUNDRED NINETY–FIVE DOLLARS and Forty-Two Thousand, Seven Hundred Thirty Deutsche Marks, Defendant-Appellant.

John Weed, Claimant-Appellant.

No. 82–2062.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1983.

Decided April 18, 1983.

Rehearing and Rehearing En Banc Denied June 28, 1983.

See also, 7th Cir., 689 F.2d 752.

Charles W. Nixon, Chicago, Ill., for defendant-appellant.

Steven A. Miller, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL and BAUER, Circuit Judges, and GRAY, Senior District Judge.*

PELL, Circuit Judge.

John Weed appeals from the district court's denial of his Rule 60(b) motion, Fed. R.Civ.P. 60(b), seeking to vacate a default judgment entered against him, pursuant to which he was ordered to forfeit $48,595.00 and 42,730 deutsche marks. The issue on appeal is whether the district judge abused his discretion in refusing to vacate the default judgment.

## I. FACTS

John Weed and his brother, Leonard Weed, arrived at O'Hare Airport in Chicago on December 22, 1977. They were coming from Germany. Between them, they carried $48,595.00 and 42,730 deutsche marks.[1] The money was the property of John Weed and allegedly constituted his entire life's savings.

The brothers completed Customs Declaration Form 6059–B (8–23–74) which asked, among other questions:

10. Are you or anyone in your party carrying over $5,000.00 in coin, currency, or monetary instruments?

Allegedly because the brothers misunderstood this question to imply that it was illegal to carry over $5,000.00 upon entering the United States, they falsely answered "No" to the question.

It appears that they could not have been under this misapprehension a year later as the 1978 customs form, immediately following the above quoted question, specifically states:

NOTE: It is not illegal to transport over $5,000 in monetary instruments; however, it must be reported.

* William P. Gray, Senior District Judge for the Central District of California, sitting by designation.

1. The approximate value, in dollars, of 42,730 deutsche marks is $18,000.00.

There is no indication that the funds here involved bore in any way the taint of illegality.

The Customs inspectors discovered the money. The brothers were interrogated. The currencies were counted and listed. John Weed confirmed the amount of money and his ownership thereof, as well as providing the other information required of one who transports greater than $5,000 into the country. See 31 U.S.C. § 1101(b) (1976) (recodified as 31 U.S.C.A. § 5316(b) (Supp. 1982)).[2] The money was seized and both John and Leonard Weed were arrested. The brothers were indicted for violating 18 U.S.C. § 1001 (1976) which provides for anyone who "knowingly and willfully ... makes false or fraudulent statements" in any matter within the jurisdiction of any United States department or agency to be fined and/or imprisoned.

After John Weed's release on a personal recognizance bond, he was permitted to travel to Germany. While there, he was arrested and incarcerated for a narcotics offense involving a substance that Weed claims is not controlled in the United States.

While Weed was imprisoned in Germany, the United States instituted criminal proceedings against his brother Leonard for violation of 18 U.S.C. § 1001 (1976), as a result of his false response on the customs form. By a signed agreement dated July 11, 1979, Leonard Weed stipulated he would not contest any civil forfeiture proceeding regarding the seized monies. In return, the Government declined further criminal prosecution of Leonard Weed.

On July 28, 1980, the United States instituted a civil forfeiture proceeding. On September 10, 1980, the warrant of seizure and monition and public notice of forfeiture were published. A copy was mailed to John Weed who was still imprisoned in Germany. Copies were also sent to Leonard Weed and his attorney and to Donald Shine, an attorney who had been appointed to represent John Weed at his bond hearing.

No one filed either a claim to the money or an answer to the forfeiture complaint. On November 28, 1980, the Government filed a motion for default judgment. The notice of motion stated that a hearing would be held before Judge Leighton on December 5, 1980. Again, notification was sent to John Weed in Germany, to Donald Shine, and to Leonard Weed and his attorney. At the December 5th hearing, no one appeared to contest the forfeiture. Accordingly, a default judgment and order of forfeiture were entered.

John Weed was released from prison in Germany in July, 1981, in order to be returned to the United States to stand trial on the criminal charge, see 18 U.S.C. § 1001 (1976), that resulted from his violation of the reporting requirement, see 31 U.S.C. § 1101 (1976) (recodified as 31 U.S.C.A. § 5316 (Supp.1982)). Following a two-day bench trial, John Weed was found guilty of making a false statement on Customs Form 6059–B and was sentenced to six months in prison. No fine was imposed, although Section 1001 would have permitted a fine of not more than $10,000.

On November 13, 1981, John Weed filed a Rule 60(b) motion, Fed.R.Civ.P. 60(b), seeking relief from the default judgment. The Government argued that the motion was untimely and that Weed had failed to establish grounds justifying relief under Rule 60(b). Judge Leighton found that he did

**2.** Title 31 of the United States Code was revised pursuant to Pub.L.No. 97–258, 96 Stat. 877 (Sept. 13, 1982). Although the substance of the statutory sections relevant to this opinion is not affected by the recodification, the section numbers are changed. Throughout this opinion, reference is to the original section number with the number under the new codification shown parenthetically.

The information required by Section 1101 is obtained from a traveler on form 4790 which is provided to one who answers that he or she is transporting in excess of $5,000.00. Weed was never given this form although he apparently provided at the time of the interrogation all the information sought by it.

In this appeal, John Weed relies in part on a claimed violation of duty on the part of the customs officer in not proffering form 4790 at the time of the interrogation. Because of the disposition we reach, we express no opinion of the validity of this contention.

not need to address whether the motion was timely and whether any delay was the result of excusable neglect, *see* Fed.R.Civ.P. 60(b), because Weed lacked a "meritorious defense" to the forfeiture proceeding. The Rule 60(b) motion was denied. On May 14, 1981, Judge Leighton granted Weed's motion for reconsideration but affirmed his previous decision that the motion must be denied for lack of a meritorious defense.

## II. RULE 60(b) RELIEF

Rule 60(b) relief from a default judgment is an extraordinary remedy and is granted only under exceptional circumstances. *Ben Sager Chemicals International v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir.1977). Review of a denial of relief from a default judgment is subject to the abuse of discretion standard. *Breuer Electric Manufacturing Co. v. Toronado Systems of America, Inc.*, 687 F.2d 182, 187 (7th Cir.1982). In order for Weed to prevail on this appeal, he must demonstrate that his Rule 60(b) motion met three criteria. Two are stated in the Rule itself: (1) the motion must be filed within a "reasonable" time and not more than one year after the judgment was entered; and (2) Weed's default in the forfeiture action must be the result of "excusable neglect." The third criterion is that Weed must demonstrate that he had a meritorious defense to the forfeiture action. *Breuer Electric Manufacturing Co. v. Toronado Systems of America, Inc.*, 687 F.2d 182, 186 (7th Cir. 1982). We examine each criterion in turn.

Weed's Rule 60(b) motion was filed forty-nine weeks after the default judgment was entered. The motion is therefore within the absolute one-year limit established by the Rule, Fed.R.Civ.P. 60(b). For the motion to be "timely," however, the forty-nine week delay must be a "reasonable" one, *id.* The Government urges that it was not reasonable because: (1) Weed had received notice of the forfeiture action; (2) counsel in the United States could have acted on Weed's behalf because they too received notice of the proceedings; or, alternatively (3) Weed could have filed a Rule 60(b) motion *pro se,* by mail from Germany.

The Government's arguments are not persuasive. The two attorneys notified of the forfeiture action and the motion for a judgment of default were the attorneys appointed to represent John and Leonard Weed in the bond proceedings related to the 18 U.S.C. § 1001 (1976) indictments. Neither Weed nor the Government could have reasonably expected either attorney to represent John Weed in the civil forfeiture action. Any suggestion, therefore, that the attorneys neglected their duty does not support the Government's position.

John Weed was first represented by an attorney in any proceedings arising out of this incident, other than the bond proceeding in 1977 and his arraignment in August 1981, at which he was represented by an attorney who had a conflict of interest, on October 14, 1981. On that date, almost a year after the default judgment in the forfeiture proceedings had been entered, Weed's present attorney entered an appearance in the criminal proceedings.

Weed first met his attorney on October 26, 1981, the day the criminal bench trial began. According to a brief filed in this appeal, it was on that date the attorney was first able to tell John Weed that the Government had withdrawn a prior offer to return one-half of the money. When asked about this during oral argument, the Government attorney responded that he "had absolutely nothing to do with the criminal end of this case." When asked whether the right arm is responsible for the left arm, the counsel responded, "Well, it's the civil-criminal dichotomy in the United States Attorney's Office...."

Further, if Weed's allegations are true, he was indigent as a result of the United States having seized his entire life savings. Any opportunity he might otherwise have had to engage United States counsel, from a German prison, was diminished to virtual non-existence. There is nothing in the record indicating that Weed possessed either legal knowledge or access to American legal materials to permit him *pro se* to contest the forfeiture action or the entry of a default judgment from a foreign country.

Having notice of proceedings on the forfeiture action, even timely notice,[3] was of little value to Weed if he was precluded from acting to protect his interests. Upon his return to this country and the appointment of counsel, Weed did act promptly to file the Rule 60(b) motion. That motion was in fact filed approximately a month after his current counsel was appointed and just over two weeks after the conclusion of trial on the criminal charge.

The combination of circumstances presented in this case—Weed's lack of funds, his imprisonment in a foreign country, the absence of counsel acting on his behalf in the forfeiture proceeding, and Weed's understanding that the Government was going to return half of the seized money—support the conclusion that the forty-nine week delay in Weed's filing of a Rule 60(b) motion was reasonable. Considered together, these facts also support the conclusion that Weed's default in the forfeiture proceeding was the result of excusable neglect. We turn to the third criterion: whether Weed presented a meritorious defense to the forfeiture action.

The district judge held, in a summary order of disposition, that Weed had not presented a meritorious defense. The initial problem we encounter in evaluating whether the district judge abused his discretion in so holding is that it is unclear precisely what defenses are available in a forfeiture proceeding pursuant to 31 U.S.C. § 1102(a) (1976) (recodified as 31 U.S.C.A. § 5317(b) (Supp.1982)).

The reporting requirement, 31 U.S.C. § 1101 (1976) (recodified as 31 U.S.C.A. § 5316 (Supp.1982)), is applicable to one who "knowingly" transports more than $5,000 into or out of the United States at one time. Two "meritorious" defenses to a

forfeiture proceeding would therefore be: (1) that a person was transporting less than $5,000; and (2) that, if a person were transporting more than $5,000, he was unaware that he was doing so. The question remains whether the statutory intent was to preclude all other defenses and to eliminate judicial discretion in a Section 1102, 31 U.S.C. § 1102(a) (1976) (recodified as 31 U.S.C.A. § 5317(b) (Supp.1982)), forfeiture action.

The language of Section 1102 states that monetary instruments regarding which a required report was not filed are "subject to seizure and forfeiture." 31 U.S.C. § 1102(a) (1976). The recodification of this provision states that such a monetary instrument "may be seized and forfeited." 31 U.S.C.A. § 5317(b) (Supp.1982). Neither version of the relevant provision contains mandatory language. This suggests that some degree of discretion exists.

The conclusion that forfeiture is a discretionary rather than a mandatory remedy is strengthened by the variety of remedies made available to the Government under the statutory scheme. In addition to the criminal provision contained in 18 U.S.C. § 1001 (1976), which was invoked against Weed, a second criminal provision exists. This provision, 31 U.S.C. § 1058 (1976) (recodified as 31 U.S.C.A. § 5322(a) (Supp. 1982)), provides for a term of imprisonment of up to one year and a fine of up to one thousand dollars. A civil penalty of an amount less than or equal to the amount of the monetary instruments for which a required report was not filed may also be assessed. 31 U.S.C. § 1103 (1976) (recodified as 31 U.S.C.A. § 5321(a)(2) (Supp. 1982)). If the forfeiture remedy, at issue in this case, is utilized, the amount of any civil penalty must be reduced by the amount forfeited. *Id.* Further, the Secretary of

---

**3.** Weed contends that he did not receive timely notice of the motion for default because it was mailed seven rather than ten days before the December 5th hearing. The Government contends that it had no obligation to provide any notice because Weed had not filed an appearance in the forfeiture proceeding. Although the Government would appear to be technically correct under Rule 3 of the Admiralty Rules for

the United States District Court for the Northern District of Illinois (1982), we do not find this argument dispositive. The reasons Weed did not file an appearance, did not respond to the notice of default, and did not file at an earlier date the Rule 60(b) motion are all attributable to the peculiar circumstances of being indigent, in a foreign country, and imprisoned in that country, throughout the proceedings.

the Treasury has the power to remit any penalty of forfeiture, in whole or in part, upon whatever terms he deems reasonable and just. 31 U.S.C. § 1104 (1976) (recodified as 31 U.S.C.A. § 5321(c) (Supp.1982)). Read together, these statutory sections compel the conclusion that, at the very least, the Secretary of the Treasury has discretion as to which remedies shall be pursued for a violation of the Section 1101 reporting requirement.

■ The primary defense upon which Weed relies stems from his misunderstanding of the question on Customs Form 6059–B. Weed did not realize that the question embodied a reporting requirement. After his money in excess of $5,000.00 was discovered, customs officials clarified the ambiguity. They did not, however, provide him with form 4790 which would have been given to him had he answered the initial question truthfully. During the interrogation he answered truthfully all the questions embodied in that form and in Section 1101.

Weed is not alone in finding the phraseology of the pertinent question on Customs Form 6059–B misleading. In *United States v. Granda,* 565 F.2d 922 (5th Cir.1978), the defendant was prosecuted, pursuant to 31 U.S.C. §§ 1058, 1101(a) (1976) (recodified as 31 U.S.C.A. §§ 5322(a), 5316(a) (Supp. 1982)), for failing to file the required report. The Fifth Circuit analyzed the requirement of knowledge embodied in Section 1101 and of willfulness in Section 1058. The court concluded that the "failure of the government to make known the requirements of the statute is fatal to their case." 565 F.2d at 926. Because the court was unwilling to hold that Granada's false response to the question on Customs Form 6059–B proved that she was aware of the reporting requirement, *id.,* the knowing and willful standards were not met.

The Government seeks to distinguish *Granda* from the instant case on the ground that Section 1058, at issue in *Granda* but not the present appeal, requires willfulness.[4] It is not clear that this distinction is warranted in light of the Fifth Circuit's reliance on the language of *both* Sections 1058 and 1101.

At the very least, the *Granda* decision supports the conclusion that it is reasonable to believe that Weed failed to comply with Section 1101 because he did not understand the ambiguous wording on Customs Form 6059–B as triggering a reporting requirement. This conclusion is furthered by the rewording of the pertinent question on the revised customs declaration so as to clarify the reporting requirement.

On the record before us, we cannot conclude that Weed's defense is clearly meritorious. It is possible, however, that the knowledge requirement of Section 1101 was not satisfied, *see United States v. Granda,* 565 F.2d 922 (5th Cir.1978), or that if judicial discretion is permitted by the statute, the circumstances of this case together with the recognition that forfeitures are not favored in the law, *e.g., Bramble v. Kleindienst,* 357 F.Supp. 1028, 1030 (D.Colo.1973), *aff'd,* 498 F.2d 968 (10th Cir.1974), warrant a favorable exercise thereof.

We are not unmindful that the trial court denied relief on the basis that there was no meritorious defense. It is unclear, however, whether the judge below believed Weed unworthy of a favorable exercise of judicial discretion or whether he found the only discretion permitted under the statute to be that of the Secretary of the Treasury, *see* 31 U.S.C. § 1104 (1976) (recodified as 31 U.S.C.A. § 5321(c) (Supp.1982)). Assuming that some judicial discretion exists, there was very meager analysis by the district court supporting the conclusion reached of the type which would have been helpful to this court in reviewing an exercise of discretion. In that exercise, it appears to us

---

4. The statutory section pursuant to which Weed was convicted, 18 U.S.C. § 1001 (1976), requires willfulness in making a false or fraudulent statement. It does not specifically require willfulness in failing to comply with the reporting requirement of 31 U.S.C. § 1101 (1976) (recodified as 31 U.S.C.A. § 5316 (Supp. 1982)), as Section 1058, at issue in *Granda,* does.

that the district court should have looked at the matter of meritorious defense from the point of view of the defenses that might have been considered if Weed had been represented by counsel. If John Weed had been in this country when his brother was involved in proceedings, because the money was John Weed's, not the brother's, and John's false statement was the significant one, he might well have sought administrative remission from the Secretary of the Treasury.[5] At one time, at least, it appears that one branch of the Government would have closed out the case by returning one-half of the money.

The matter of whether an original decision of a contested forfeiture would have come out as it did in default is not now before us. We in no way condone a false statement on any form to be filed with a governmental authority. Such an action is detrimental to the proper functioning of government. Weed's claim should not, however, be foreclosed by entry of a default judgment under circumstances that precluded his presentation of a defense and the pursuit of any administrative remedy that might be available. In the limited circumstances of this case, we conclude that the existence of a colorable defense is sufficient to warrant granting of the Rule 60(b) motion and that the failure of the district judge to do so was an abuse of discretion.

We are simply holding that, on the facts of this case, John Weed should, on a *de novo* basis, have an opportunity to present his case. We do entertain an idea that the punishment should not overfit the crime. John Weed, who has been deprived of use of his life savings for nearly five and one-half years, who was sentenced to six months incarceration because of his incorrect answer regarding money he could have otherwise legally brought into the country, nevertheless will have the burden of persuading the trial judge that he is entitled to lenitive treatment. The Government will have the full opportunity to present its reasons in support of complete forfeiture.

---

5. We find no indication in the record whether Weed ever sought remission of the forfeiture from the Secretary of the Treasury. If he did

## CONCLUSION

Although this Court declines to reach the merits of whether Weed should be required to forfeit the substantial sum of money at issue, we find that, under the circumstances of this case, the district judge abused his discretion in denying Weed's Rule 60(b) motion to vacate the default judgment. The district court's decision denying that motion is vacated and the case is remanded to the district court for further proceedings on the merits. Circuit Rule 18 shall apply on remand.

VACATED AND REMANDED.

not do so, the reason may be that he was unaware, while imprisoned in Germany, of the statutory provision regarding remission.