[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-17254
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 6, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-20463-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN LUIS ORELLANA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 6, 2009)

Before DUBINA, Chief Judge, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Juan Luis Orellana appeals his conviction for knowingly and

willfully delivering a package containing firearms to a common carrier without written notice, in violation of 18 U.S.C. §§ 922(e) and 924(a)(1)(D). On appeal, Orellana argues that the evidence presented at trial was insufficient to support his conviction. In addition, Orellana identifies several potential trial errors, and he argues that the cumulative effect of those errors deprived him of his Sixth Amendment right to a fair trial. First, he asserts that the district court erred by admitting evidence related to the purchase of the two rifles found in the package. Next, he argues that testimony by a government agent, Special Agent DeVito, regarding statements made by him and his wife in Spanish was impermissible hearsay because Agent DeVito testified that she was not fluent in Spanish, and explained that another agent had translated Orellana's statements for her. Orellana also asserts that admission of Agent DeVito's testimony violated his rights under the Confrontation Clause because the agent who translated his statements did not testify at trial.

In addition, Orellana argues that the prosecutor's cross-examination of his wife concerning an appraisal listing for the Orellanas' home and the prosecutor's comments during closing argument violated his constitutional rights. Finally, Orellana argues that the district court's jury instructions were erroneous because they failed to include all the *mens rea* elements of his offense.

# I.

"We review *de novo* whether there is sufficient evidence in the record to support a jury's verdict in a criminal trial, viewing the evidence in the light most favorable to the government, and drawing all reasonable inferences in favor of the jury's verdict." *United States v. Beckles*, 565 F.3d 832, 840 (11th Cir. 2009). The test is whether "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted). "It is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Garcia*, 447 F.3d 1327, 1334 (11th Cir. 2006) (internal quotation marks omitted).

In relevant part, 18 U.S.C. § 922(e) provides:

> It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being . . . shipped.

18 U.S.C. § 922(e). In addition, the applicable penalty statute states that any person who "willfully violates" various firearms statutes, including § 922(e), shall be fined, imprisoned for not more than five years, or both. 18 U.S.C. §

3

924(a)(1)(D).

The Supreme Court has interpreted the term "willfully," as used in § 924(a)(1)(D), to mean that the government must prove that the defendant knew that his conduct was unlawful. *Bryan v. United States*, 524 U.S. 184, 196, 118 S. Ct. 1939, 1947, 141 L. Ed. 2d 197 (1998). However, the government need not prove that the defendant was aware of the specific requirements of the particular statute. *Id.* at 191-195, 118 S. Ct. at 1944-47. The Court based its holding on "the traditional rule that ignorance of the law is no excuse." *Id.* at 196, 118 S. Ct. at 1947. The Court distinguished earlier cases in which it had held that knowledge of the law is required for willful violations of certain tax and monetary transaction reporting statutes because those cases dealt with "highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct." *Id.* at 194-195, 118 S. Ct. at 1946-47.

In *United States v. Granda*, 565 F.2d 922 (5th Cir. 1978),[1] we overturned a defendant's conviction for knowingly and willfully transporting monetary instruments in an amount exceeding $5,000 into the United States without filing a customs report because the government had failed to prove that the defendant was

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

aware of the statute's reporting requirement. *Id.* at 923-27. In so holding, we observed that it was "impossible to prove beyond a reasonable doubt" that a defendant willfully violated the statute without showing that the defendant was aware of the reporting requirement, because the isolated act of bringing more than $5,000 into the United States was "not illegal or even immoral." *Id.* at 926.

In order to establish that Orellana knowingly and willfully violated 18 U.S.C. § 922(e), the government was required to prove that Orellana knew that his conduct was unlawful, but it was not required to prove that he was aware of § 922(e)'s notice requirement. Viewing the evidence in the light most favorable to the verdict, Orellana covered the rifles and ammunition with layers of packaging, and then informed the shipping company, Transportes Zuleta, that the box did not contain any rifles or ammunition. He listed "Luis Fernando Cordon" as the sender of the package, rather than using his own name. Based on this evidence, we conclude that a reasonable fact-finder could have concluded that Orellana knew that his conduct was unlawful. Further, we conclude that the government also introduced sufficient evidence to show that Orellana failed to give written notice to Transportes Zuleta.

## II.

We review a district court's evidentiary rulings for a clear abuse of

discretion. *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009).

Under Rule 404(b),

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b). For evidence of a prior bad act to be admissible under Rule 404(b), it must meet three requirements. First, "the evidence must be relevant to an issue other than the defendant's character; [2] the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; and [3] the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403." *Brannan*, 562 F.3d at 1307 (internal quotation marks omitted). With respect to the third requirement, we have stated that "Rule 403 is an extraordinary remedy which should be used only sparingly." *United States v. Betancourt*, 734 F.2d 750, 757 (11th Cir. 1984). A trial court may reduce the possibility of unfair prejudice through the use of a limiting instruction. *United States v. Edouard*, 485 F.3d 1324, 1346 (11th Cir. 2007).

In this case, the testimony by Orellana's cousin, Trabanino, that Orellana had asked him to purchase one of the rifles found in the package, and the forms

that Trabanino and Orellana filled out when purchasing the rifles, indicated that Orellana was the owner of both rifles. The fact that Orellana owned the rifles made it more likely that he knew that they were in the box. Thus, this evidence relating to the purchase of the rifles was relevant to the issue of knowledge. In addition, the probative value of this evidence was not outweighed by any unfair prejudice to Orellana. Therefore, we conclude that the district court did not abuse its discretion by not excluding this evidence.

### III.

Because Orellana did not raise a hearsay or a Confrontation Clause challenge to Agent DeVito's testimony during his trial, we review this claim for plain error. Under the plain error standard, a defendant must show: (1) an error, (2) that is plain or obvious, and (3) that affected his substantial rights. *United States v. Jiminez*, 564 F.3d 1280, 1286 (11th Cir. 2009). If the first three conditions are met, we have discretion to correct an error that "seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (internal quotation marks omitted).

The Federal Rules of Evidence provide that a statement made by a party against whom it is offered is not hearsay. Fed.R.Evid. 801(d)(2)(A). Statements made by a party's agent or servant are also excluded from the definition of hearsay.

7

Fed.R.Evid. 801(d)(2)(C) and (D). We have held that translations of a defendant's statements do not constitute impermissible hearsay where the translator was acting as the defendant's agent, and where the translator had sufficient capacity and no motive to mislead. *United States v. Alvarez*, 755 F.2d 830, 859-60 (11th Cir. 1985) (adopting the reasoning of *United States v. Da Silva*, 725 F.2d 828 (2d Cir.1983)). "Prior statements of witnesses are hearsay and are generally inadmissible as affirmative proof." *United States v. Khanani*, 502 F.3d 1281, 1292 (11th Cir. 2007) (internal quotation marks omitted). However, a witness's prior inconsistent statements are admissible for the purpose of impeachment. *Id.*

"[T]he Confrontation Clause of the Sixth Amendment prohibits the admission of out of court statements that are testimonial unless the declarant is unavailable and the defendant had a previous opportunity to cross-examine the declarant." *Jiminez*, 564 F.3d at 1286. "[T]he Confrontation Clause prohibits *only* statements that constitute impermissible hearsay." *Id.* Admission of a defendant's own out-of-court statements does not violate the Confrontation Clause. *United States v. Brown*, 441 F.3d 1330, 1358-59 (11th Cir. 2006).

During Orellana's trial, Special Agent DeVito testified that, although she could not speak Spanish fluently, she did understand Spanish, and could understand "portions or the majority of" Orellana's answers. In addition, the

8

record does not indicate that Agent DeVito was unable to understand Anna Orellana's statements. Because it is not clear that Agent DeVito's testimony was based on Agent Cole's translations, Orellana cannot show any plain error with respect to those translations.

To the extent that Special Agent DeVito's testimony was based on her own recollection, her testimony regarding Orellana's answers was not hearsay, because Orellana's responses were admissions by a party-opponent. In addition, admission of Orellana's own out-of-court statements did not violate the Confrontation Clause. Agent DeVito's testimony regarding Anna Orellana's statements was not hearsay because those statements were being used to impeach Anna Orellana's direct testimony, rather than being offered for the truth of the matter asserted. Because Agent DeVito's testimony about Anna Orellana's statements was not impermissible hearsay, it also did not violate the Confrontation Clause. Therefore, we conclude that the district court did not commit plain error by not excluding Agent DeVito's testimony concerning the Orellanas' statements.

IV.

Whether a prosecutor's statements during trial violated a defendant's constitutional rights is a mixed question of law and fact that we review *de novo*.

*United States v. Baker*, 432 F.3d 1189, 1252 (11th Cir. 2005). We will reverse a conviction based on a prosecutor's statements only where those statements: (1) were improper, and (2) prejudiced the defendant. *Id.* "Improper statements prejudice the defendant when there is 'a reasonable probability that, but for the prosecutor's offending remarks, the outcome of the . . . [proceeding] would have been different.'" *Id.* (alteration in original) (quoting *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir.1991)).

A. The Prosecutor's Questions Concerning the Appraisal Form

A party's questions on cross-examination must be supported by a good-faith factual basis. *See United States v. Foley*, 508 F.3d 627, 637 (11th Cir. 2007) (discussing standard for cross-examination of a character witness). Generally, documents must be properly authenticated or identified before being admitted into evidence. Fed.R.Evid. 901(a).

At trial, Orellana's defense was that a former tenant had given him the package for shipment, and that he did not know that there were rifles and firearms inside of the package. Orellana's wife, Anna Orellana, testified that this tenant stayed in a third bedroom in the Orellanas' home. On cross-examination, the prosecutor asked Anna Orellana whether she knew that her home had been appraised as a two-bedroom home.

Because the prosecutor had a copy of a Miami-Dade County property appraisal listing, he had a good-faith basis for asking this question. Because the government did not introduce the appraisal into evidence, no authentication was required. Also, it does not appear that the prosecutor's question resulted in any prejudice to Orellana, as it is unlikely that this question had a significant impact on the jury's verdict.

B. The Prosecutor's Remarks During Closing Argument

Although "a prosecutor may not comment on the absence of witnesses or otherwise attempt to shift the burden of proof, . . . a comment by the prosecutor on the failure by defense counsel, as opposed to the defendant, to counter or explain evidence" is permissible. *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998). Any prejudice resulting from a burden-shifting is reduced if the government or the trial court explains to the jury that the government has the burden of proof. *Id.*

Generally, a prosecutor may not express his personal opinion concerning a defendant's guilt. *See United States v. Tisdale*, 817 F.2d 1552, 1556 (11th Cir. 1987); *United States v. Young*, 470 U.S. 1, 18-19, 105 S. Ct. 1038, 1048, 84 L. Ed. 2d 1 (1985). However, a prosecutor may express a personal opinion provided that it is based on evidence in the record. *United States v. Adams*, 799 F.2d 665, 670

(11th Cir. 1986) ("I believe that the Government has proven . . . that the Defendants are guilty" held to be a permissible comment on the weight of the evidence); *see also Tisdale*, 817 F.2d at 1556 (no reversible error where prosecutor stated "I believe the government has proven its case beyond a reasonable doubt").

We conclude from the record that the prosecutor's remark during closing argument that he had not seen any pictures of the third bedroom was not an improper burden-shifting argument, but rather, was a comment on defense counsel's failure to introduce photographs of the third bedroom. Even if this remark were improper, it does not appear that it prejudiced Orellana, because the government and the district court both stated to the jury that the government had the burden of proving each element of Orellana's offense beyond a reasonable doubt. In addition, the prosecutor's comment, "I know it," when read in context, was a comment on the weight of the evidence rather than a personal opinion of Orellana's guilt. Therefore, that remark was not improper.

V.

In a case where a defendant objects to the district court's jury instructions for the first time on appeal, we review for plain error. *United States v. Dean*, 517 F.3d 1224, 1230 (11th Cir. 2008), *cert. denied*, 129 S. Ct. 2155 (2009). The Eleventh Circuit Pattern Jury Instructions, used by the district court in this case, state that an

act was done "knowingly" if it "was done voluntarily and intentionally and not because of mistake or accident." 11th Cir. Pattern Jury Instr. (Criminal Cases) § 9.1 (2003). The pattern jury instructions define the term "willfully" to mean that "the act was committed voluntarily and purposely, with the specific intent to do something that the law forbids; that is, with bad purpose either to disobey or disregard the law." *Id.*

In *United States v. Mekjian*, 505 F.2d 1320 (5th Cir. 1975), the defendant was charged with filing false Medicare claims, in violation of 18 U.S.C. § 1001. *Id.* at 1322. The relevant statutory language made it illegal to "knowingly" and "willfully" file a false claim, but the indictment only charged Mekjian with "knowingly" filing false claims. *Id.* at 1324. We held that the indictment was invalid because it failed to include the mens rea element of "willfully." *Id.* We noted that "knowingly" and "willfully" were distinct *mens rea* elements because "knowingly" only required proof that the defendant acted "with knowledge," whereas "willfully" required proof that the defendant acted "deliberately and with knowledge." *Id.* at 1324 (internal quotation marks omitted).

In this case, because the government was not statutorily required to show that Orellana was specifically aware of § 922(e)'s notice requirement, the district court did not err, much less plainly err, by not instructing the jury that the

13

government needed to prove that Orellana "knowingly" and "willfully" failed to provide written notice. In addition, although the court omitted the *mens rea* element of "knowingly" from its jury instructions, this omission did not affect Orellana's substantial rights because the definition of "willfully" used by the district court essentially includes the definition of "knowingly." An act that is performed "voluntarily and purposely" is also done "voluntarily and intentionally and not because of mistake or accident." *See* 11th Cir. Pattern Jury Instr. § 9.1. Thus, we conclude that Orellana has failed to show any plain error with respect to the district court's jury instructions.

Because Orellana has not shown any error, he has also failed to show cumulative error. Accordingly, we affirm Orellana's conviction.

**AFFIRMED.**