**UNITED STATES of America, Plaintiff,**

**v.**

**UNITED STATES CURRENCY AMOUNTING TO the SUM OF FIVE THOUSAND, THREE HUNDRED AND NINETY–THREE DOLLARS ($5,393.00) More or Less and Bolivian Currency Amounting to the Sum of One Thousand One Hundred and Eighty Pesos (1,180 Pesos) More or Less, Defendants.**

**No. 82 CV 1954 (ERN).**

United States District Court, E.D. New York.

April 10, 1984.

Raymond J. Dearie, U.S. Atty., Eastern Dist. of N.Y., by Winstanley F. Luke, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

William M. Kunstler, New York City, for claimant Michelle Lewis.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This forfeiture action arises as a by-product of the narcotics smuggling conspiracy treated in *United States v. Feld*, 514 F.Supp. 283 (E.D.N.Y.1981), and *United States v. Muench*, 694 F.2d 28 (2d Cir. 1982). The facts are not in dispute. One of the principal defendants in that crime, Michelle Lewis, is the claimant at bar. On November 10, 1980, she was arrested at Kennedy Airport in New York while en route from Bolivia to West Germany. At that time, she completed a customs declaration, stating that she did not possess currency in excess of $5,000. A customs officer's search of Ms. Lewis produced the currency sought to be forfeited. The case is before the Court upon the government's motion for summary judgment.

31 U.S.C. § 1102(a) (now § 5317) provides:

"Any monetary instruments which are in the process of any transportation with respect to which any report required to be filed under section 1101(a) of this title either has not been filed or contains material omissions or misstatements are subject to seizure and forfeiture to the United States."

By definition, 31 U.S.C. § 1052(*l*), monetary instruments include currency of the United States and other countries.

In opposing the motion, claimant assumes that the elements of a criminal prosecution under 31 U.S.C. § 1058 for a violation of § 1101 (now § 5316), *see United States v. Dichne*, 612 F.2d 632, 636 (2d Cir.1979), are the same as the elements for a civil forfeiture of the funds involved. Specifically, she desires to litigate the issue of whether she acted "willfully" or "knowingly", *i.e.*, with knowledge of the reporting obligation imposed by § 1101.

She relies on the following passage from *Ivers v. United States*, 581 F.2d 1362, 1367 (9th Cir.1978):

"While a non-frivolous argument to the contrary might well have been made to a finder of fact had Ivers chosen to proceed to trial, we must take his plea of guilty to be an admission of each and every essential element of the crime charged, including the element of knowledge and willfulness. This being so, Ivers is now, in a suit involving the same parties, collaterally estopped from denying that he willfully and knowingly failed to report the currency in his possession. (Citations omitted.)

"Ivers' plea of guilty to a violation of 31 U.S.C. § 1058, then, along with the agreed statement of facts submitted to the court, provided the district court with a sufficient factual basis upon which to enter a summary judgment of forfeiture under 31 U.S.C. § 1102. Any material issue of fact which might have prevented the entry of such judgment was conclusively resolved by Ivers' plea. Had a judgment of forfeiture been sought and obtained immediately following the seizure of Ivers' property, there could be no doubt of its validity."

In *Ivers* the government counterclaimed for a judgment of forfeiture in response to Ivers' suit to recover funds seized, which

he had failed to declare when he had entered the United States. Ivers had also pled guilty to the criminal charge stemming from the failure to report; thus the Court applied collateral estoppel to preclude any dispute about whether he had acted knowingly or willfully. The Court's phraseology seemingly assumes that the willfulness necessary to sustain a criminal conviction is also required to obtain a civil forfeiture. In the next paragraph, however, the Court acknowledges the possibility of securing a valid forfeiture of the funds prior to the institution of criminal proceedings but does not list the elements of the government's case where there has been no prior criminal proceeding.[1]

◼ Given the posture of summary judgment, the instant case presents the issue of whether the government may keep property under § 1102(a) where the claimant protests innocence of any criminal conduct.[2] More on point than *Ivers* is *United States v. Six Thousand Seven Hundred Dollars, etc.*, 615 F.2d 1, 3 (1st Cir.1980), where the court found the claimant's lack of intent immaterial:

"The estate, while recognizing that Congress has the authority to provide for the forfeiture of an innocent party's property, *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–90 [94 S.Ct. 2080, 2090–95, 40 L.Ed.2d 452] (1974), argues that statutes should be construed to avoid such an unjust result whenever possible. The forfeiture provisions here are straightforward and do not allow the liberalized construction the estate urges. Section 1101(a) specifies the persons required to file a report and section 1102(a) subjects to forfeiture any monetary instruments for which a required report has not been filed; forfeiture is not tied to or dependent upon the wrongdoing of the owner of the monetary instruments."

*See also One Lot Emerald Cut Stones And One Ring v. United States*, 409 U.S. 232, 235 n. 5, 93 S.Ct. 489, 492 n. 5, 34 L.Ed.2d 438 (1972) (*per curiam*); *United States v. One 1975 Pontiac LeMans, etc.*, 621 F.2d 444, 447 (1st Cir.1980) ("Courts applying the various federal forfeiture statutes have 'almost uniformly' rejected innocence of the property's owner as a defense to a government forfeiture action.") (citations and footnote omitted).

◼ Even if the Court were to credit the viability of claimant's asserted lack of specific intent as a defense, her innocence would be in serious doubt as a matter of law. In *United States v. San Juan*, 545 F.2d 314, 319 (2d Cir.1976), the court stated:

"As a result, in order to prove willfulness, the Government should make some effort to bring the reporting requirement to the traveler's attention. (Citations omitted.) [18]

"18. In the future, the Government could avoid some of the confusion generated by this case by using a form that asks the traveler whether he is carrying over $5,000 and, if so, notifies him that he may have to make some declaration."

The government has heeded this advice. The form claimant signed advised as follows:

"11. Are you or any family member carrying over $5,000.00 (or the equivalent value in any currency) in monetary instruments such as coin, currency, traveler's checks, money orders, or negotiable instruments in bearer form. (*If yes, you must file a report on Form 4790, as required by law.*) Note: It is not illegal to transport over $5,000 in monetary instruments; however, it must be reported." (Emphasis in original.)[3]

*Fifty Dollars, etc.*, 706 F.2d 1195, 1197 (11th Cir.1983).

---

**1.** The District Court left no doubt. It stated that even if ignorance of the law were an excuse, remission of the forfeiture on the ground of good faith and innocence was exclusively within the discretion of the Secretary of the Treasury. *Ivers v. United States*, 413 F.Supp. 394, 491 (N.D. Cal.1975). See 31 U.S.C. § 1104.

**2.** This issue apparently was left unanswered in *United States v. Six Thousand Two Hundred &*

**3.** In light of the contents of the customs declaration, the following argument of claimant is beside the point.

"Ms. Lewis quite clearly did not have knowledge of the reporting requirements. The form she was asked to fill out, by its own terms, is only applicable to those persons who

As a result, claimant is in a poor position to contend that she is an innocent bystander about to lose her property due to no fault of her own.

The motion of the United States for summary judgment is granted, and the currency seized is ordered forfeited.

SO ORDERED.

are 'arriving travellers.' Ms. Lewis obviously did not consider herself an arriving traveller—in fact, she concededly had a fervent wish not to be arriving anywhere except West Germany. Since she did not consider herself an arriving traveller, it is hard to see how she can be held to have knowledge of a reporting requirement which is limited to those persons intending to enter United States customs territory."

Section 1101 contains no limitation of applicability to persons who intend to enter the United States or its customs territory. Moreover, the Court sees clearly that the reporting requirement is printed on the form.