UNITED STATES of America,
Plaintiff-Appellant,

v.

$359,500 IN UNITED STATES
CURRENCY, Defendant,

Benedetto Romano, Claimant-Appellee.

No. 827, Docket 86–6237.

United States Court of Appeals,
Second Circuit.

Argued Feb. 17, 1987.

Decided Sept. 8, 1987.

Frank J. Clark, III, Asst. U.S. Atty., W.D.N.Y. (Roger P. Williams, U.S. Atty., W.D.N.Y., of counsel), for plaintiff-appellant.

Murray Appleman, New York City, for claimant-appellee.

Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

The United States appeals from a judgment of the United States District Court for the Western District of New York, John T. Curtin, *Chief Judge*, which denied the government's petition seeking civil forfeiture of $359,500 in United States currency under 31 U.S.C. § 5317, and ordered that the currency be returned to the claimant, Benedetto Romano. The currency had been seized from Romano by United States customs officials because he had failed to report it before he departed from the United States.

Judge Curtin held that forfeiture was not authorized in this case because Romano did not have actual knowledge of the currency reporting provision of 31 U.S.C. § 5316(a). As an alternative holding, Judge Curtin found that the government's failure to provide some form of notice of the reporting requirement violated Romano's due process rights.

We hold that the district court erred on the statutory construction issue and that the statute does not require knowledge of the currency reporting requirement as a condition of forfeiture. On the due process issue, we conclude that the court should have considered whether Romano could be charged with constructive knowledge of the currency reporting requirement, thus eliminating the need, at this juncture, to decide whether enactment of § 5316 alone provided Romano with notice sufficient to

satisfy due process. Accordingly, we remand to the district court for a determination of whether the notice required by due process could be satisfied by charging Romano, under the facts and circumstances of this particular case, with constructive knowledge of the currency reporting requirement.

## BACKGROUND

On November 13, 1983, Romano and his wife drove their car from Buffalo, New York, across the Peace Bridge toward Fort Erie, Ontario, Canada. Motorists desiring to cross the Peace Bridge from Buffalo must first pass through a toll booth to pay a fee, but they do not encounter any customs or immigration checkpoint until they enter Canada on the far side of the bridge. The parties stipulated below that there were no signs or notices posted on or near the bridge informing motorists of the currency reporting requirement. There was a notice posted in the nearby administrative office of the United States customs service, but a departing motorist ordinarily would have no occasion to enter that office.

When he reached the Canadian side of the bridge, Romano was questioned by a Canadian customs officer and then referred to a secondary inspection yard for further examination. There, Romano voluntarily complied with Canadian inspector Mehlenbacher's request that he open the trunk of his car. Inside were several bags that collectively contained a large sum of money. In response to Mehlenbacher's inquiry, Romano admitted that he had not declared the currency before leaving the United States. After consulting with his superior, Mehlenbacher directed Romano to return to the United States and immediately notified United States customs agents by telephone that Romano would be returning with a large quantity of cash.

Upon returning to the American side, Romano was stopped and questioned at the primary station, where he initially claimed to have $30,000 to $35,000, and, after further questioning, ultimately admitted to possessing more than $300,000. Romano then entered the administrative office and completed two forms: Form 4790, entitled "Report of International Transportation of Currency or Monetary Instruments", declaring that he was returning from Canada with $360,000, and Form 6059–B, a baggage declaration form, printed in Italian, on which Romano admitted that he held more than $5,000. When a records check disclosed that Romano had not filed a Form 4790 before leaving the United States earlier that day, the money was seized.

On December 28, 1983, Romano filed with the Secretary of the Treasury a petition for remission or mitigation of the forfeiture, stating that he had no prior knowledge of, and did not intend to violate, the currency reporting requirement, that his education was limited to the fifth grade in an Italian grammar school, and that he could "not read English to any great extent." Without any action by the secretary on that petition, the government filed a civil complaint on June 12, 1984, seeking forfeiture of the currency under § 5317. Romano's answer included a counterclaim for return of the currency, repeating the allegations he had asserted in his petition for remission.

Romano moved for summary judgment, which Judge Curtin denied by order dated February 4, 1985. Therein Judge Curtin rejected Romano's argument that the phrase "knowingly transports" contained in 31 U.S.C. § 5316(a) refers to knowledge of the reporting requirement, ruling that

> the correct interpretation of the statute is that "knowingly" refers to the carrier's knowledge that he or she is in possession of more than $5,000 while traveling from a place in the United States to or through a place outside the United States.

Following a bench trial on May 10, 1985, the subsequent filings of briefs and proposed findings of fact, and additional briefing requested by the court on the due process issue, Judge Curtin issued his unpublished opinion on September 29, 1986. On the construction of the term "knowingly" in § 5316(a), Judge Curtin reconsidered the conclusion he had reached in denying Romano's summary judgment motion and,

persuaded by the analysis in an intervening opinion of the eleventh circuit, *United States v. One (1) Lot of $24,900 in United States Currency*, 770 F.2d 1530 (11th Cir. 1985) [hereinafter *United States v. $24,-900*], held that actual knowledge of the currency requirement by the person from whom the monetary instrument was seized is a necessary element of a civil forfeiture action under 31 U.S.C. § 5317(b) (now § 5317(c)). The court found that since Romano had no such knowledge, he did not violate the statute.

Alternatively, Judge Curtin ruled that "[e]ven if actual knowledge * * * is not required for a civil forfeiture, some notice, or opportunity to learn, must be provided." Because no form of notice had been given by the government, the district court held that forfeiture would violate due process. Judge Curtin rejected the government's contention that the civil forfeiture proceeding itself provides sufficient process, stating that once the money has been seized, formal notice and a hearing are of little value and "frequently not meaningful." After a violation has occurred "forfeiture is almost assured. * * * [T]he only meaningful notice * * * would be [that] given before the point of departure." The opinion briefly disposed of several other claims raised by Romano that were found to be "without merit".

On appeal, the government argues that relevant statutory language and legislative history indicate that actual knowledge of the reporting requirement is necessary only for criminal violations, not for civil forfeiture. In addition, while conceding that posting notice on the Peace Bridge "would have been wise and desirable", the government contends that the constitution does not require such posting; rather, the government claims, congress's act of enactment provides adequate notice.

We agree with the government's suggested construction of § 5316(a). We believe, however, that the suggestion that mere enactment of the currency reporting requirement provided Romano with adequate notice presents a grave constitutional question, but one that we need not decide now. Rather, because due process requirements could be satisfied if the government can show that, under the circumstances, Romano should reasonably have been aware of the likelihood of having to report the currency he endeavored to transport out of the country, a remand is appropriate.

## DISCUSSION

In November 1983, § 5316(a) provided in relevant part that a person who "knowingly * * * transports or has transported monetary instruments of more than $5,000 at one time * * * from a place in the United States to or through a place outside the United States" shall file a report of such transportation. In 1984 congress increased the dollar amount to $10,000. *See* Pub.L. 98–473, Title II, § 901(c), Oct. 12, 1984, 98 Stat. 2135. If the report is not filed, "the instrument and any interest in property * * * traceable to the instrument" can be seized and forfeited to the government. 31 U.S.C. § 5317(c) (formerly § 5317(b)).

### A. *The statutory issue.*

■ The issue whether the phrase "knowingly transports" as stated in § 5316(a) requires actual knowledge of the reporting requirement as an element of civil forfeiture under § 5317(c) is an issue of first impression in this circuit. *See United States v. $26,660 in United States Currency*, 777 F.2d 111, 112 (2d Cir.1985) (per curiam). The view of the majority of the courts that have considered the issue is that actual knowledge is not required for civil forfeiture. *See United States v. Forty-Seven Thousand Nine Hundred Eighty Dollars ($47,980) in Canadian Currency*, 804 F.2d 1085, 1090 (9th Cir.1986) [hereinafter *United States v. $47,980*]; *United States v. $122,043.00 in United States Currency*, 792 F.2d 1470, 1474 (9th Cir. 1986) [hereinafter *United States v. $122,-043*]; *United States v. Twenty Thousand Seven Hundred Fifty-Seven Dollars and Eighty-Three Cents ($20,757.83) Canadian Currency*, 769 F.2d 479, 482 (8th Cir.1985); *United States v. Currency Amounting to Sum of Five Thousand, Three Hundred*

*and Ninety-Three Dollars ($5,393.00),* 583 F.Supp. 1447, 1449 (E.D.N.Y.1984) [hereinafter *United States v. $5,393* ]; *United States v. $20,900.00 in United States Currency,* No. 83–2578, slip op. at 3 (E.D.Pa. January 30, 1984); *United States v. $14,400 in United States Currency,* No. 77–2342-J, slip op. at 4–6 (D.Mass. March 21, 1982); *United States v. $4,255,625.39,* 528 F.Supp. 969, 972 (S.D.Fla.1981). The minority view, to which the district court here subscribed, equates a person who "knowingly" transports money and is subject to the civil forfeiture penalty of 31 U.S.C. § 5317(c) with one who "willfully" violates the reporting requirements and is subject to criminal prosecution under § 5322. *United States v. $24,900,* 770 F.2d 1530, 1533 (11th Cir.1985); *cf. United States v. Forty-Eight Thousand, Five Hundred Ninety-Five Dollars,* 705 F.2d 909, 914 (7th Cir.1983) [hereinafter *United States v. $48,595* ]. We adopt the majority view.

In *United States v. $24,900,* the district court dismissed the government's complaint on the ground it failed to allege that the claimant had acted with actual knowledge of the reporting requirement when he attempted to board a flight to Aruba while in possession of an amount of currency exceeding the statutory amount. 770 F.2d at 1531–32. In affirming, the eleventh circuit based its decision on two factors: a quotation from *United States v. Granda,* 565 F.2d 922 (5th Cir.1978); and the purpose of the Currency and Foreign Transactions Reporting Act (the "act").

The court in *Granda* had examined 31 U.S.C. § 5322, which provides criminal sanctions for those who "willfully violat[e]" the reporting requirements of § 5316, and had held that "the terms *knowing* [in § 5316] and *willful* [in § 5322] require proof of the defendant's knowledge of the reporting requirement and his specific intent to commit the crime." 565 F.2d at 925–26 (emphasis in original), *quoted in United States v. $24,900,* 770 F.2d at 1532–33. The eleventh circuit relied on this language because, in its view, the terms of a statute cannot have one meaning in a criminal prosecution and another meaning in a civil action. 770 F.2d at 1533 (citation omit-

ted). The court recognized that the term "willful" is not expressly included in the language of § 5316, but did not regard that as meaningful because the language of *Granda* was in the conjunctive. *Id.* (quoting *United States v. $48,595,* 705 F.2d at 914 ("not clear that distinction [between "knowing" and "willful"] is warranted in light of the Fifth Circuit's reliance on the language of *both* Sections 1058 [now § 5322] and 1101 [now § 5316]") (emphasis in original)).

We find this analysis unpersuasive. A criminal prosecution for failure to meet the reporting requirements has as elements both a knowing transportation under § 5316(a) and a willful violation under § 5322. In proving a willful violation, *a fortiori* one demonstrates a knowing transportation of the monetary instrument, as well as knowledge of, and an intent to circumvent, the reporting requirement. Thus, the language quoted from *Granda* is correct in the criminal context because of the combined application of § 5316 and § 5322. In the civil context, however, the state of mind element is far more limited because § 5322 is inapplicable and the other relevant statutory language is devoid of any reference to willfulness or intent to violate the reporting requirement.

Congress could have used identical language in both the civil forfeiture and criminal provisions. The fact that it chose not to do so must be given heed. *Cf.* 2A N. Singer, *Sutherland Statutory Construction* § 57.06, at 654 (Sands 4th ed. 1984) ("[c]ontrasting language in similar statutes may show that the legislature intended different standards of compliance"). "Knowingly" in § 5316 modifies "transports", indicating that before the requirement to report attaches, the transporter must be aware that he or she is taking a monetary instrument into or out of the United States. *See United States v. $122,043,* 792 F.2d at 1474. "Willfully" in § 5322 modifies "violat[es]", thereby making knowledge of the reporting requirement "an additional element the government must prove to secure a criminal" conviction. *Id.* (citing *United States v. Chen,* 605 F.2d 433, 434 (9th

Cir.1979)). While "willfully violates" necessarily includes "knowingly transports", the converse is not true.

To bolster its analysis of the statutory language, the eleventh circuit in *United States v. $24,900* also looked to the purpose of the act, which is "to require reports of foreign transactions where such reports would be helpful in investigations of criminal, tax and regulatory violations." 770 F.2d at 1534 (citing congressional reports). Establishing knowledge as a prerequisite to forfeiture would advance the statutory objective, the court opined, because the purpose can "only be achieved if travelers were made aware of the reporting requirements." *Id.* at 1535.

The court failed to consider, however, that congress had expressly recognized and provided for the possibility that the reporting requirements might be violated inadvertently. *See United States v. $47,980*, 804 F.2d at 1090 ("Congress's choice of words suggests that it recognized violations of [§ 5316] may be either willful or nonwillful—that is, with or without knowledge that the failure to report is illegal."). Section 5321(c) of title 31 vests the Secretary of the Treasury with discretion to remit any part of a forfeiture under § 5317, a provision that was intended to be used "to prevent ordinary citizens or businessmen from being unduly penalized for an *inadvertent* violation." Senate Committee on Banking and Currency, S. Rep. No. 91–1131, 91st Cong., 2d Sess. at 7 (1970) (emphasis supplied) [hereinafter *Senate Report*]. Permitting discretionary relief from inadvertent violations would be superfluous if civil forfeiture under § 5317 were to be construed as requiring actual knowledge of the reporting requirements, for in that event any violation would necessarily be willful, and therefore could not be considered inadvertent. *Cf.* 4 C. Sands, *Sutherland Statutory Construction* 37 (Rev. 3d ed. 1975) ("[w]here design has been distinctly stated[,] no place is left for construction") (footnote omitted).

In short, as a matter of statutory construction the government need not prove in a civil forfeiture action under 31 U.S.C. § 5317(c) that the person who allegedly failed to comply with the reporting requirement of § 5316(a) either had actual knowledge of, or intended "willfully" to violate, that requirement. We turn, then, to the due process issue.

### B. *The constitutional issue.*

■ The doctrine of constitutional avoidance requires courts to consider "whether a construction of the [challenged] statute is fairly possible by which the [constitutional] question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). As our earlier discussion shows, the language and history of the currency reporting provisions forecloses a construction that requires actual knowledge for civil forfeiture; thus it is necessary to reach and rule upon the constitutional issue. *See United States v. Locke*, 471 U.S. 84, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985) ("[w]e cannot press statutory construction 'to the point of disingenuous evasion' even to avoid a constitutional question") (quoting *Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 379, 53 S.Ct. 620, 622, 77 L.Ed. 1265 (1933)).

The government's assertion that congressional enactment of § 5316 alone provided Romano with notice sufficient to satisfy due process raises a significant constitutional question. The government relies upon *United States v. Locke*, but that case is readily distinguishable because the claimants there had actual knowledge of the relevant reporting requirement. The Supreme Court upheld the forfeiture of unpatented mining claims for failure of the claimholders to comply with an annual filing requirement imposed by act of congress. *Id.* 105 S.Ct. at 1796. The claimholders previously had complied with state law filing and assessment work requirements throughout the period during which they held their mining claims, and had satisfied the initial federal recording requirement, which is set forth in the same statute that required the annual filings not timely made. *Id.* at 1790; *see* 43 U.S.C. § 1744(a) (annual filing required); *id.* § 1744(b) (initial recording required). Thus the claimholders, who operated a multi-million dollar

business in a regulated industry, had actual notice of the filing provisions.

Here, by contrast, Romano was a private individual, not a financial institution. Moreover, he had no prior knowledge of the reporting requirement, a factual finding below that is not challenged on appeal. Furthermore, carrying currency across our borders is not a prohibited or regulated activity; the reporting requirement is merely informational. In fact, congress expressed a desire "not to limit or impede the free flow of currency in international commerce" in enacting the currency reporting statutes. *Senate Report* at 7, *quoted in United States v. $24,900,* 770 F.2d at 1535.

Even the customs service apparently recognizes that international travelers might not anticipate having to file a currency disclosure report because, as the cases reflect, it generally does seek to provide them with reasonable notice. *E.g., United States v. $47,980,* 804 F.2d at 1087 (customs agent asked claimants entering country from Canada by car whether they had more than $5,000 and advised them of the reporting requirement); *United States v. $122,043,* 792 F.2d at 1472 (announcement over public address system by customs officer, signs posted on walls leading to and at checkpoint, and two verbal explanations by customs agents); *United States v. $26,-600,* 777 F.2d at 112 (traveler entering country from Canada by car completed form asking whether traveler carried over $5,000 in currency); *United States v. $20,-700,* 769 F.2d at 480 (same); *United States v. Six Thousand, Two Hundred and Fifty Dollars,* 706 F.2d 1195, 1196 (11th Cir.1983) (per curiam) (customs officer twice told claimant of reporting requirement); *United States v. $48,595,* 705 F.2d 909, 910 (7th Cir.1983) (claimant entering country via international flight filed false declaration form); *United States v. $5,393,* 583 F.Supp. at 1448 (same).

The gravity of the constitutional question is underlined by our decision in *United States v. Mancuso,* 420 F.2d 556 (2d Cir. 1970). The statute at issue there required citizens who had been convicted of a narcotics or marijuana offense, or who were addicted to, or used, narcotics, to register with customs officials before leaving or entering the country. *Id.* at 556. The sole issue presented was whether a violation of the statute "without knowledge or probability of knowledge of its provisions" was actionable. *Id.* This court construed the statute to require actual knowledge and thereby avoided the due process issue; however, it is apparent that the holding was strongly influenced by the basic unfairness of enforcing the statute against an unsuspecting traveler. *See id.* at 557–59.

We are concerned here, as we were in *Mancuso,* with the basic fairness of imposing sanctions for the violation of a reporting requirement that might not be known by the casual traveler when the government has taken no steps whatsoever to provide reasonable notice of the requirement.

It is unnecessary, however, to decide at this juncture whether the notice provided by the enactment of § 5316 alone would be sufficient to satisfy due process requirements, since we believe that the due process requirement could be satisfied, under the facts and circumstances of this particular case, by a showing that Romano could be charged with constructive knowledge of the currency reporting requirement. We could without hesitation countenance the seizure and forfeiture of Romano's currency under either of two scenarios: if the government had made a reasonable effort to give departing motorists notice of the currency reporting requirement, such as a simple highway sign on the approaches to the Peace Bridge; or, if the government could show that, under the circumstances, Romano could be charged with constructive knowledge of the reporting requirement, in the sense that he should have been aware of the probability of its existence. *Cf. Texaco, Inc. v. Short,* 454 U.S. 516, 547, 102 S.Ct. 781, 801, 70 L.Ed.2d 738 (1982) (Brennan, J., dissenting) (reasonable notice required by circumstances in which "an average citizen would have no reason to regard the triggering event as calling for a heightened awareness of one's legal obligations." (footnote omitted)). Although the government provided no reasonable notice in this

936

case, it might be able to prove a "probability of such knowledge", *Lambert v. California*, 355 U.S. 225, 229, 78 S.Ct. 240, 243, 2 L.Ed.2d 228 (1957), and thereby satisfy the requirements of due process, by proving that under the particular facts of this case, and given the pervasive government regulation of currency transactions, customs, imports and exports, and the like, Romano should reasonably have known that transporting such a large quantity of currency out of the country was probably a regulated act. Such a proffer should properly be made in the first instance in the district court. We would need to address the question whether the enactment of § 5316 alone provided Romano with sufficient notice to satisfy due process requirements only if it is determined on remand that Romano cannot properly be charged with such constructive knowledge.

Although we do not decide today whether the notice provided by the enactment of § 5316 is sufficient to satisfy due process standards, we note that requiring the government to give reasonable notice of the currency reporting provision would neither impose on it an overwhelming burden nor create problems of enforcement with regard to other civil forfeiture provisions. First, the government already has a duty to prove actual knowledge, presumably by providing notice, in order to secure a criminal conviction under § 5322. In addition, our reading of the cases reflects a general governmental practice of providing notice to most international travelers. Thus, this is an exceptional case. In all likelihood that general practice was not followed here because of a perceived impracticality of giving notice, along with an opportunity to comply, to motorists leaving the country via the Peace Bridge. We are confident, however, that bureaucratic ingenuity can overcome such obstacles.

Finally, the constitutional question presented here depends on the particular facts of, and statutes relevant to, this case. Due process seems to be provided in other forfeiture provisions through their particular attributes, such as a connection with a criminal law violation, *see, e.g.,* 18 U.S.C. § 981(a) (money laundering proceeds); *id.*

§ 1082 (forfeiture of illegal gambling ship); *id.* § 1963(a) (interest in, and property acquired through, RICO enterprise); *id.* § 2253 (property used in and gross profits derived from sexual exploitation of children); 21 U.S.C. § 853 (property used in or acquired from drug violations); *id.* § 881(a) (list of drug-related property subject to forfeiture), or with a regulated business interest, *see, e.g.,* 7 U.S.C. § 608a(5) (forfeiture for exceeding commodities quota or allotment); 27 U.S.C. § 206(b) (distilled spirits conveyed unlawfully in bulk); 30 U.S.C. § 184(h) (interest in lease of coal mine); 43 U.S.C. § 909 (forfeiture of railroad corporation's land grant for failure to make required deposit). Those statutes and circumstances, therefore, are readily distinguishable from those now before us.

Remanded for further proceedings consistent with this opinion.