BENEDETTO ROMANO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Romano v. Commissioner
Docket No. 621-85
United States Tax Court
T.C. Memo 1995-324; 1995 Tax Ct. Memo LEXIS 330; 70 T.C.M. (CCH) 104; July 20, 1995, Filed *330 An order will be issued denying petitioner's motion for summary judgment. Benedetto Romano, pro se. [1]
Catherine R. Chastanet, for respondent. HAMBLEN
HAMBLEN
MEMORANDUM OPINION HAMBLEN, Chief Judge: Respondent determined a deficiency of $ 191,895.19 in petitioner's 1983 Federal income tax and an addition to tax of $ 9,594.76 under section 6653(a)(1). Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure. This case is before the Court on petitioner's motion for summary judgment under Rule 121. The sole issue raised by the motion is whether an alleged violation of petitioner's due process rights under the Fifth Amendment to the Constitution mandates the suppression of certain evidence. For the reasons set forth below, we answer this question in the negative and deny petitioner's motion for summary judgment. Background
Petitioner *331 resided in Malba, New York, at the time the petition was filed in this case. The present motion focuses on petitioner's attempt to transport $ 359,500 in cash from the United States to Canada and the subsequent judicial proceedings resulting from that event. The relevant facts are not in dispute and were set forth in United States v. $ 359,500 in U.S. Currency, 645 F. Supp. 638, 639-640 (W.D.N.Y. 1986), remanded 828 F.2d 930 (2d Cir. 1987), as follows: On November 17, 1983, Benedetto Romano crossed the Peace Bridge, heading from Buffalo, New York, to Ontario, Canada. When he crossed to the Canadian side of the bridge, he spoke with a Canadian Customs official at the primary inspection area. For reasons which were never established at trial, Mr. Romano was referred to the secondary inspection station. At the secondary station, Mr. Romano spoke with another Canadian Customs official, Bruce Mehlenbacher. Mr. Mehlenbacher could not recall the substance of the conversation, but remembered that Mr. Romano had planned to stay in Canada for just a few days. Mr. Romano opened his trunk at Inspector Mehlenbacher's request. There *332 were some bags containing several thousand dollars in the trunk. Mehlenbacher asked whether Romano had declared the money before exporting it from the United States; Mr. Romano replied that he had not. Although there are no Canadian regulations governing the importation of money, Mehlenbacher was suspicious of the unusually large sum Mr. Romano was carrying. He did not permit Mr. Romano to enter Canada and, after alerting United States Customs, ordered him to return to the United States. Once he had crossed back over the bridge and returned to the American side, Mr. Romano was questioned by Immigration Officer Samuel J. Tiranno. Mr. Tiranno testified that Romano admitted to having some currency, eventually stating that he had more than $ 300,000. Mr. Romano was sent to the secondary inspection area, where he completed Form 4790, Report of International Transportation of Currency or Monetary Instruments. He also filed a baggage declaration form, Customs Form 6059-B, which was printed in Italian. In response to the question of whether he was carrying more than $ 5,000, Mr. Romano checked "Yes." A records check revealed that Mr. Romano had not completed any forms, including the required *333 Form 4790, when he had crossed the bridge earlier that day. Since Mr. Romano failed to file these forms before he crossed the bridge, the money was confiscated. [Citations omitted.]
As a direct result of the discovery of the cash in petitioner's car, the Federal Government undertook two immediate civil actions against petitioner: [2] *334 (i) The United States sought a forfeiture of the confiscated money based on petitioner's failure to comply with the currency reporting requirement of 31 U.S.C. sec. 5316(a) (the Forfeiture Action); and (ii) on the day the cash was discovered respondent issued a termination assessment against petitioner for $ 169,981. [3] In addition, on October 11, 1984, after petitioner failed to file a tax return for his 1983 taxable year, respondent issued a notice of deficiency for the entire 1983 taxable year. That notice of deficiency, which underlies the current proceeding, included as income the amount of currency that was discovered in the trunk of petitioner's car, and made estimated adjustments for wages and salary, interest income, and cost of living items. [4]
Petitioner's current motion relies heavily on the opinion of the District Court in the Forfeiture Action. Accordingly, we briefly summarize the proceedings in that action. As noted above, the United States sought the forfeiture of the confiscated money based on petitioner's failure to comply with the currency reporting requirement of 31 U.S.C. sec. 5316(a). The *335 District Court for the Western District of New York (the District Court) denied the Government's forfeiture petition, holding that petitioner did not have actual knowledge of the currency reporting provision, as required for a forfeiture under 31 U.S.C. sec. 5317. United States v. $ 359,500 in U. S. Currency, supra at 641. As an alternative holding, the District Court found that the Government's failure to provide some form of notice of the reporting requirement violated petitioner's due process rights under the Fifth Amendment to the Constitution. Id. at 642-643. The Court of Appeals for the Second Circuit reversed and remanded the District Court's judgment. United States v. $ 359,500 in U.S. Currency, 828 F.2d 930 (2d Cir. 1987). According to the Court of Appeals, the forfeiture statute does not require knowledge of the reporting requirement. Id. at 934. Moreover, the Court of Appeals concluded that petitioner's due process rights were not necessarily violated. Id. at 935. The Court of Appeals held that due process could be satisfied by a *336 showing that petitioner had constructive knowledge of the currency reporting requirement, and the Court of Appeals remanded the case to the District Court for that factual determination. Id.
The District Court has not yet rendered a decision in the remanded Forfeiture Action. Respondent submitted an affidavit from the assistant U.S. attorney representing the United States in the Forfeiture Action stating that the United States and petitioner have agreed to hold that action in abeyance pending the outcome of the current proceedings in this Court. According to the affidavit, that agreement was based on representations by petitioner's late counsel to the District Court that the proceedings in this Court might affect the status of the District Court's Forfeiture Action. Discussion
A motion for summary judgment is granted if "the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); O'Neal v. Commissioner, 102 T.C. 666, 674 (1994). The *337 moving party bears the burden of establishing that this requirement is satisfied. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). In determining whether the moving party has established that no genuine issue as to any material fact exists, the opposing party is given the benefit of all reasonable doubt, and all inferences that may be drawn from the underlying facts contained in the record are viewed in a light most favorable to the opposing party. O'Neal v. Commissioner, supra; Sundstrand Corp. v. Commissioner, supra.
Petitioner contends that the litigation in the Forfeiture Action established that petitioner's due process rights were violated. As a result, petitioner argues, the "fruit of the poisonous tree" doctrine of Wong Sun v. United States, 371 U.S. 471 (1963), mandates that we suppress the evidence of the cash found in petitioner's car for purposes of the present case. [5] Without this evidence, petitioner concludes, respondent's notice of deficiency is without any foundation *338 and is arbitrary and erroneous. For the reasons set forth below, we disagree with petitioner's premise that a due process violation has been established. Moreover, even if such a violation occurred, we do not believe that the suppression of evidence is warranted. 1. Alleged Due Process Violation
Petitioner's motion for summary *339 judgment is premised on the contention that a due process violation occurred with respect to the Forfeiture Action. In support of this position, petitioner repeatedly cites the District Court's opinion in the Forfeiture Action, United States v. $ 359,500 in U.S. Currency, 645 F. Supp. at 642-643. In that opinion, the District Court concluded that a forfeiture was not authorized under the terms of the relevant statute. As an alternative holding, the court observed that a forfeiture was not permitted because the Government's failure to provide some form of notice of the reporting requirement violated petitioner's due process rights. Id.
Petitioner focuses heavily on the District Court's alternative constitutional holding. In doing so, however, petitioner flatly ignores the reversal of the District Court's opinion by the Court of Appeals for the Second Circuit. The Court of Appeals disagreed with both the lower court's statutory and constitutional interpretations. With respect to the constitutional due process issue, the Court of Appeals found that the District Court mistakenly applied an "actual knowledge" standard, and it remanded the case for a *340 determination of whether petitioner had constructive knowledge of the currency reporting requirement. United States v. $ 359,500 in U.S. Currency, 828 F.2d at 934-936. Petitioner is aware that no decision has yet been rendered on remand. Indeed, according to the affidavit submitted by respondent, the proceedings in the District Court on remand were held in abeyance at the specific request of petitioner's late counsel. Accordingly, we disagree with petitioner's representations that a due process violation has been conclusively determined in the Forfeiture Action. In effect, petitioner is asking this Court to decide the constitutional issue presented in the Forfeiture Action. We refuse to do so. The issue of whether a forfeiture of the confiscated money violates petitioner's due process rights was explicitly remanded to the District Court by the Court of Appeals for the Second Circuit. Id. The Court of Appeals noted that the resolution of this issue requires an analysis of the specific facts presented in the Forfeiture Action, and it explicitly observed that "Such a proffer should properly be made in the first instance in the district court." Id. at 936. *341 Accordingly, an inquiry by this Court into the constitutionality of the forfeiture proceedings would be an inappropriate interference with the function of another court. 2. Inapplicability of the Exclusionary Rule
Although the District Court has not yet ruled on the constitutionality of the Forfeiture Action on remand, we can nevertheless resolve petitioner's motion. Even if petitioner is ultimately successful in his constitutional challenge to the Forfeiture Action, such a result would not justify the invocation of the exclusionary rule to suppress evidence in the present case. In general, the exclusionary rule bars the use of evidence derived from unlawful Government conduct. United States v. Janis, 428 U.S. 433 (1976); Kluger v. Commissioner, 91 T.C. 969, 980 (1988). Although the exclusionary rule was developed as a deterrent to searches and seizures that violate the Fourth Amendment to the Constitution, United States v. Janis, supra at 443-447, we have also recognized that evidence may be excluded on due process grounds under the Fifth Amendment where it has been seized *342 from an individual in a manner so outrageous that it shocks the Court's conscience. Similarly, a court may invoke its supervisory powers to exclude evidence seized "in a manner inconsistent with American standards of justice." [Vallone v. Commissioner, 88 T.C. 794, 813 (1987) (quoting Proesel v. Commissioner, 73 T.C. 600, 607 (1979)).]
The purpose of the exclusionary rule "is to deter future unconstitutional governmental conduct, and not to redress the injury to the victim of the unconstitutional conduct." Houser v. Commissioner, 96 T.C. 184, 195 (1991). The Supreme Court has recognized that "the exclusionary rule imposes a substantial cost on the societal interest in law enforcement by its proscription of what concededly is relevant evidence." United States v. Janis, supra at 448-449. Accordingly, "As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." United States v. Calandra, 414 U.S. 338, 348 (1974). The exclusionary *343 rule applies not only to impermissibly seized evidence, but also to certain derivative evidence acquired as an indirect product or result of the unlawful search. Wong Sun v. United States, 371 U.S. 471 (1963). The Supreme Court, however, clarified that this "fruit of the poisonous tree" doctrine does not apply simply because * * * [the evidence] would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." [Id. at 488; citation omitted.]
Petitioner contends that the fruit of the poisonous tree doctrine mandates suppression of the evidence of cash found in his car. We disagree. "An essential prerequisite to the application of the fruit of the poisonous tree doctrine is some unlawful governmental conduct." Kluger v. Commissioner, supra at 980-981. The uncontested facts show that petitioner *344 voluntarily revealed the existence of the cash in response to the Canadian customs official's questioning. Petitioner does not allege that the Canadian official's actions abridged his rights in any way. [6] Moreover, upon returning to the U.S. side of the Peace Bridge, petitioner was asked to complete relevant currency reporting and baggage declaration forms, which he voluntarily did. These forms revealed that petitioner was in possession of the evidence in question. Petitioner does not allege that the U.S. immigration officer violated any of petitioner's constitutional rights by asking petitioner to complete these forms. Because no unlawful governmental conduct occurred with respect to the discovery of the cash in the trunk of petitioner's car, that evidence never became "tainted", and the fruit of the poisonous tree doctrine does not apply. *345 The only constitutional violation that petitioner alleges arises from the Forfeiture Action. Petitioner's focus on this alleged violation is misplaced. The evidence in question in the present case did not arise as a result of the Forfeiture Action. Rather, the instant case and the Forfeiture Action are separate proceedings arising from the lawful discovery of cash in petitioner's car trunk. Even if the U.S. Customs Service officials had not seized the cash and sought its forfeiture (the alleged constitutional violation), they still would have been made aware of petitioner's possession of the cash, as they were informed of it by the Canadian customs officials and by the written declaration petitioner ultimately completed. Because the disputed evidence would have been available to respondent regardless of whether the Forfeiture Action was instituted, the constitutionality of the Forfeiture Action is not relevant to the present motion. "It is clear that the cases implementing the exclusionary rule 'begin with the premise that the challenged evidence is in some sense the product of illegal governmental activity.'" Nix v. Williams, 467 U.S. 431, 444 (1984) *346 (quoting United States v. Crews, 445 U.S. 463, 471 (1980)). For this reason, the Supreme Court has recognized that the exclusionary rule does not apply when evidence is obtained from a source independent of the illegal Government conduct or when the evidence would inevitably have been discovered regardless of the unlawful conduct. Nix v. Williams, supra at 443-444. The inapplicability of the exclusionary rule is even more compelling in the present case, because the evidence was discovered before the alleged constitutional infraction (i.e., the prosecution of the Forfeiture Action) took place. For the foregoing reasons, An order will be issued denying petitioner's motion for summary judgment.
Footnotes
1. Murray Appleman, who was counsel of record for petitioner, died following the briefing of the current motion but before issuance of this opinion. There is presently no counsel of record for petitioner.↩
2. The United States also charged petitioner with criminal tax evasion. Although petitioner was convicted of this charge at a bench trial, the conviction was overturned by the Court of Appeals for the Second Circuit. See United States v. Romano, 938 F.2d 1569↩ (2d Cir. 1991).
3. In November 1989, when the statute of limitations on assessment and collection of the 1983 termination assessment was about to expire, the United States filed suit seeking to reduce the termination assessment to judgment pursuant to sec. 7402(a). The District Court for the Western District of New York granted summary judgment in favor of the United States, and the Court of Appeals for the Second Circuit affirmed.↩
4. This Court previously held that the District Court's judgment against petitioner with respect to the termination assessment is not res judicata as to the notice of deficiency underlying the present case. See Romano v. Commissioner, 101 T.C. 530↩ (1993).
5. Petitioner also has petitions pending in docket Nos. 21599-92 (1990 taxable year), 28871-92 (1989 taxable year), and 8303-93 (1981 and 1982 taxable years), which have been consolidated with each other but not with the instant case. He contends that the fruit of the poisonous tree doctrine also applies to evidence submitted in those consolidated cases. Because the instant motion was filed only with respect to docket No. 621-85, we need not, in this opinion, address the applicability of petitioner's evidentiary argument to the consolidated cases. Instead, it will be addressed in a separate opinion relating to respondent's pending motion for summary judgment in those consolidated cases.↩
6. Even if the Canadian customs official had discovered the evidence in a manner inconsistent with the Constitution, it is doubtful that the exclusionary rule would apply. In United States v. Janis, 428 U.S. 433 (1976), the Supreme Court held that, in the context of a Federal civil tax proceeding, evidence unlawfully seized by a State criminal enforcement officer was not excludable in the absence of Federal participation in the illegality. The Court reasoned that the deterrent purpose underlying the exclusionary rule would not be furthered under such circumstances. Id. at 454. Moreover, the Court observed that "It is well established, of course, that the exclusionary rule, as a deterrent sanction, is not applicable where a private party or a foreign government commits the offending act." Id.↩ at 456 n.31 (emphasis added).