UNITED STATES of America, Plaintiff,

v.

U.S. CURRENCY in the amount of one hundred seventy thousand dollars and no cents ($170,000.00), more or less, Defendant.

Faustino Chaves, Claimant.

No. CV 94–0461 (MDG).

United States District Court, E.D. New York.

Oct. 3, 1995.

Jorin G. Rubin, Arthur Hui, Assistant U.S. Attorney, Brooklyn, NY, for plaintiff.

Victor E. Rocha, Miami, FL, for claimant Faustino Chaves.

*MEMORANDUM AND ORDER*

GO, United States Magistrate Judge.

This is an *in rem* action brought to forfeit monies seized pursuant to 31 U.S.C. § 5317(c) (1983 & 1995 Supp.) for failure to file a required International Transportation

of Currency or Monetary Instrument Report ("CMIR"). The parties, pursuant to 28 U.S.C. § 636(c), have consented to having me decide claimant's motion for summary judgment.

## BACKGROUND

The facts material to determination of this motion are undisputed. On April 7, 1993, claimant Faustino Chaves delivered a crate to the American Airlines cargo terminal at John F. Kennedy ("JFK") Airport for shipment on a space available basis to Myriam Chaves in Cali, Colombia. Airline officials assigned the crate to flight 575, which was scheduled to depart JFK at 11:58 a.m. and arrive in Colombia that same day. The flight had a short scheduled stopover in Miami International Airport before proceeding to Colombia.

Prior to the flight's departure for Miami, U.S. customs officers conducted a random inspection of the American Airlines terminal. Because the crate appeared to have an unusually thick bottom, the customs officers x-rayed the crate and found that it had a false bottom containing $170,000 in U.S. currency. The officers later seized the crate pursuant to 31 U.S.C. § 5316, which requires that a Custom's form 4790 (that is, a CMIR) be completed when an individual transports or attempts to transport more than $10,000 from the United States to a place outside the United States. The claimant did not file a CMIR on April 7, 1993 or at any time thereafter.

On April 29, 1993, an American Airlines official telephoned Chaves and advised him to go to JFK Airport to file an insurance claim because the crate had been damaged. Chaves did not go to the airport and made no inquiry until May 6, 1993. On June 10, 1993, the U.S. Customs Service sent claimant a notice of seizure letter and subsequently commenced this forfeiture action.

## DISCUSSION

█ Summary judgment is appropriate pursuant to Fed.R.Civ.P. 56 when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genu-ine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991) (citations omitted). The moving party bears the initial burden of demonstrating an absence of material facts and once it has done so, the burden shifts to the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether there is a genuine issue of material fact, the court must resolve ambiguities and draw inferences in favor of the nonmoving party. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53 (1986); *Capital Imaging Associates, P.C. v. Mohawk Valley Medical Associates, Inc.,* 996 F.2d 537, 542 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993).

A party opposing summary judgment must present "significant probative supporting evidence" that a factual dispute exists. Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In addition, Fed. R.Civ.P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex.* 477 U.S. at 322, 106 S.Ct. at 2552.

█ The central issue in this case is whether the claimant violated any currency reporting statute which would trigger the Government's right to seize and forfeit the currency. The claimant argues that he was never required to file a CMIR because no "departure" occurred as required by applicable regulations.

Forfeiture of currency seized in the course of being transported out of the United States involves the interplay of three statutes. *See United States v. $500,000,* 62 F.3d 59 (2d Cir.1995). Section 5316(a) of Title 31 requires the filing of a CMIR by any person who knowingly "transports, is about to transport, or has transported, monetary instruments of more than $10,000" from the United States to any place outside. 31 U.S.C.

§ 5316(a)(1) (1983 & 1995 Supp.). This provision further empowers the Secretary of the Treasury to prescribe the "time and place" for filing a report. Section 5324(b)(1) makes unlawful the failure "to file a report required by Section 5316" as well as conduct which "cause[s] or attempt[s] to cause a person to fail to file such report."

Section 5317(c) authorizes forfeiture of "any property, real or personal, involved in a transaction or attempted transaction in violation of section 5324(b)...." It also specifies that, for purposes of the subsection, a monetary instrument "is being transported" from:

> the time the instrument is delivered to the United States Postal Service, common carrier, messenger, or bailee through the time it is delivered to the addressee, intended recipient, or agent of the addressee or intended recipient without being transported further in, or taken out of, the United States.

*Id.* (1995 Supp.). This provision is dispositive of the instant motion, since it expressly permits forfeiture once the monetary instrument is *delivered* to a common carrier for transportation abroad. It is the conduct of the claimant in conveying the currency to the airline, rather than the transfer of the currency aboard an international flight, that is determinative of when the duty to file arises. Such an approach makes sense given that a person consigning a package for delivery by a carrier or the postal service generally has no control over the exact mode of transportation or actual flight to be utilized in conveyance.[1]

■ The regulations promulgated by the Secretary of the Treasurer implementing 31 U.S.C. § 5316 also make clear that delivery to a common carrier triggers the requirement to file a CMIR.[2] Specifically, 31 C.F.R. § 103.23(a) requires that:

> Each person who physically transports, mails, or ships, or causes to be physically transported, mailed, or shipped, or attempts to physically transport, mail or ship, or attempts to cause to be physically transported, mailed, or shipped, currency or other monetary instruments in an aggregate amount exceeding $10,000 at one time from the United States to any place outside the United States .... shall make a report thereof. *A person is deemed to have caused such transportation, mailing or shipping when he* aids, abets, counsels, commands, procures, or *requests it to be done by* a financial institution or *any other person.* (Emphasis added).

Under this regulation, the claimant is deemed to have caused the transportation, mailing or shipping of the currency once he requested American Airlines to ship the crate to Colombia. Claimant thus was required to file a CMIR on the date he dropped off the crate. Since he undisputedly did not make any filing, he violated 31 U.S.C. § 5316 and the currency is subject to forfeiture.

The claimant mistakenly relies on 31 C.F.R. § 103.27(b) in arguing he did not need to make any filing because no "departure" had occurred within the meaning of that regulation. This provision governs the time and place of filing but does not modify the filing requirements set forth in the statutes and regulation discussed above. Regulation 103.27(b)(3) generally requires that CMIRs must be filed at the port of departure "at the time of departure, mailing or shipping from the United States...." 31 C.F.R. § 103.27(b)(1) and (3). The last part of the regulation permits alternative filing by mail if the currency is not directly transported by a person:

> Reports required by § 103.23(a) for currency or other monetary instruments not

---

1. The claimant may not have even been aware that the package was placed on Flight 575. According to Special Agent Arthur Boeckeler of the U.S. Customs Service, absent a flight specific designation, American Airlines agrees to send the cargo delivered to the terminal based on available space. Therefore, the sender ordinarily, as here, does not know the specific flight on which the package will be sent. Declaration of Special Agent Boeckeler dated August 23, 1994.

2. Such a regulation is valid since Congress expressly gave the Secretary the authority to "specify events in advance of departure which would trigger the duty to file the report." *United States v. Jenkins,* 689 F.Supp. 342, 344 (S.D.N.Y.1988), *reversed in part on other grounds,* 876 F.2d 1085 (2d Cir.1989) (per curiam) (*citing* H.R.Rep. No. 99–855, 99th Cong., 2d Sess., pt. 1, at 19 (1986)).

physically accompanying a person entering or departing from the United States may be filed by mail on or before the date of entry, departure, mailing or shipping.

31 C.F.R. § 103.27(b)(3).

The claimant contends that the cargo had merely been dropped off at the cargo terminal and was seized before it was placed on an international flight for "departure" as required by the regulation. However, the claimant overlooks the fact that this regulation, as well as 31 C.F.R. § 103.27(a), requires filing on the date of mailing or shipping of currency, *in addition* to the date of departure. *See United States v. 6109 Grubb Road*, 886 F.2d 618, 626 (3d Cir.1989) ("or" explicitly placed in a statute should be given its plain meaning); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1976) (every word that Congress uses in a statute should be given effect). Here, delivery of the crate by the claimant to American Airlines for conveyance to Colombia unquestionably constitutes shipping. An air waybill had been prepared and the transportation charge of $213.64 paid in full. *See* Boeckeler Dec., Exh. 1.

Moreover, the cases cited by claimant are not relevant, since they do not involve shipping or mailing, but rather, the carrying of monetary instruments by individuals about to board an international flight.[3] Since a report must be filed at the "time of departure," 31 C.F.R. § 103.27(b)(1), the question of departure frequently arises due the practical problem of enforcing the statute if actual physical departure from the airport were required. *See Rojas*, 671 F.2d at 163. In contrast, no uncertainty arises as to when "shipping or mailing" occurs under 31 U.S.C. § 5317(c) and 31 C.F.R. § 103.27(a), as discussed above.

■ Claimant's other arguments are equally unpersuasive. His contention that neither § 5316 nor § 5317 encompass violations for an attempted failure to file a report is a correct statement of law, but inapplicable here. *See U.S. v. $500,000*, 62 F.3d 59 (2d Cir.1995); *Bareno–Burgos*, 739 F.Supp. at 780–81. As discussed *supra*, since the duty to file had arisen, the question of attempt need not be addressed.

■ Claimant also argues that the government did not adequately plead that claimant had the requisite knowledge and intent to violate the statute. However, the rule in the Second Circuit is that proof of actual knowledge or wilful intent to violate reporting requirements is not required in an *in rem* forfeiture actions. *See U.S. v. $359,500*, 828 F.2d 930, 932–34 (2d Cir.1987); *U.S. v. $94,000*, 2 F.3d 778 (7th Cir.1993).

## CONCLUSION

Since claimant has failed to establish that he is entitled to judgment as a matter of law, summary judgment is DENIED.

A conference will be held on October 26 at 12:00 noon. Upon prior request, the parties may appear by telephone conference call arranged by the parties.

SO ORDERED.

Dated: Brooklyn, New York ·

October 3, 1995

---

**3.** *See, e.g., Mercado v. U.S. Customs Service*, 873 F.2d 641 (2d Cir.1989) (claimant in boarding area for an international flight had departed); *United States v. $122,043*, 792 F.2d 1470, 1477 (9th Cir.1986) (claimant stopped on runway had departed); *United States v. Ozim*, 779 F.2d 1017, 1018 (4th Cir.1985) (claimant in the airport waiting area for a flight leaving in two hours had departed); *United States v. Rojas*, 671 F.2d 159 (5th Cir.1982) (claimant stopped on the jetway had departed); *United States v. Bareno–Burgos*, 739 F.Supp. 772 (E.D.N.Y.1990) (defendant on a flight to Miami scheduled to connect with a flight to Colombia had not departed); *United States v. Cutaia*, 511 F.Supp. 619 (E.D.N.Y.1981) (defendant in departure area awaiting boarding had departed).